UNITED STATES OF AMERICA,

v.

MARK ANTHONY WOOD, JR.,
Defendant.

**MOTION TO SUPPRESS
EVIDENCE UNDER FOURTH
AMENDMENT**

The Fourth Amendment safeguards all people against "unreasonable searches and seizures." U.S. Const. amend. IV. Here, the state judge issued a warrant to search 141 Capitol Hill Road based on an affidavit (Exhibit 1) without probable cause in violation of the Fourth Amendment. Moreover, the affiant, Task Force Officer J. Overby, omitted key facts from the affidavit in a manner designed to mislead, or in reckless disregard of whether they would mislead, the judge tasked with determining whether the affidavit established probable cause. Acting under this warrant, law enforcement invaded a home and seized items from within. If the Government is allowed to submit these items into evidence, Wood's Fourth Amendment guarantee to be free from unreasonable searches would be violated. Therefore, the fruits of the search must be suppressed.

## PROCEDURAL BACKGROUND

On April 28, 2026, Wood was charged in a nine-count indictment alleging that he possessed with intent to distribute five grams or more of methamphetamine (Count One); that he possessed a firearm in furtherance of a drug trafficking crime (Counts Two and Eight); that he distributed a quantity of methamphetamine (Count Three); that he distributed five grams or more of methamphetamine (Counts Four, Five, and Six); and that he possessed with intent to distribute fifty grams or more of methamphetamine (Counts Seven and Nine). DE 1.

The Office of the Federal Public Defender was appointed to represent Wood on May 6, 2026, DE 7, and undersigned counsel entered his notice of appearance on May 7, 2026, DE 12. Wood is in the custody of the United States Marshal Service at Piedmont Regional Jail in Farmville, Virginia. The pretrial motions deadline is today, July 27, 2026.

## STATEMENT OF FACTS

In the course of an ongoing investigation, the Harnett County Sheriff's Office ("HCSO") and the Bureau of Alcohol, Tobacco, and Firearms ("ATF") allegedly purchased approximately a half ounce of methamphetamine from Wood for $300 on July 29, 2025 using a confidential informant ("CI"). Among the law enforcement officers present during the July 29 purchase was HCSO Deputy J. Overby, who is also an ATF Task Force Officer. August 1, 2025, Report of Investigation at 1 (attached hereto as Exhibit 2).

The purchase took place in the driveway of "[Wood]'s residence, located at 141 [Capitol] Hill Road, Lillington, North Carolina." Id. at 1-3. The CI met with law enforcement officers at a predetermined meeting location. Id. at 1. From there, he drove himself to 141 Capitol Hill Road. Covert video of July 29, 2025 purchase at 0:00 through 6:36 (attached hereto as Exhibit 3). He parked in the driveway and got out of his car. Id. at 6:42. On his way to the front door, the CI walked past a red Chevrolet Silverado Z71:



The CI must have recognized the red Chevrolet Silverado because, according to the Government, each of the controlled purchases in this case happened inside the Silverado. On July 17, the CI allegedly bought narcotics from Wood inside the Silverado in the parking lot of a Food Lion. On July 28, the CI allegedly purchased narcotics from Wood inside the Silverado in the back of Smart Space Storage, located on Alpine Drive in Sanford, where Wood had been employed to mow a large lawn. The

3

July 29 purchase would allegedly happen inside the Silverado too, but only *after* the CI walked past it, went inside 141 Capitol Hill Road, hung out for a while inside the house, id. at 6:42 through 15:21, then *came back outside* with Wood to purchase the alleged narcotics that were stored inside the Silverado, Exhibit 2 at 2-3.

After purchasing the alleged narcotics on July 29, the CI returned to the predetermined meeting location, where he rendezvoused with law enforcement. He turned over the alleged narcotics and his covert recording equipment, then he briefed the law enforcement officers on what he had done at 141 Capitol Hill Rd. He told them he had gone inside the home, where he saw Wood, an unknown white male, and a white female. After a while, the four of them went back outside and walked to the Silverado, which was parked in the driveway. The female got into the passenger seat of the Silverado. Wood got into the driver's seat and left the door open. The CI asked if he could purchase methamphetamine. Wood opened the Silverado's center console, asked the CI how much methamphetamine he wanted, and allegedly handed a bag of methamphetamine to the CI. Inside the center console, the CI added, he saw "a bag containing about seven ounces of [crystal methamphetamine]." Exhibit 2 at 2.

On August 6, 2025, the CI allegedly completed another controlled purchase of narcotics from Wood. That purchase happened inside the Silverado too. The CI met Wood at a work site on Griffin Road, where Wood had been employed to do landscaping for a house that was being built. The red Silverado was parked at the job site. Wood and the CI got in. Inside the Silverado, Wood allegedly weighed out the methamphetamine the CI had requested, then consummated the deal with the CI.

That night, after Wood had finished the day's work at the Griffin Road job site, HCSO Sergeant C. M. Collins saw the red Chevrolet Silverado traveling eastbound on Old U.S. Highway 421. The Silverado turned onto Community Road, then pulled into a driveway located at 380 Community Road. Shortly after the truck parked in the driveway, Sergeant Collins initiated a traffic stop by activating his blue lights. Wood identified himself, and Sergeant Collins placed him under arrest. A resident of 380 Community Road named Charlie saw the commotion, came outside, and identified Wood as his friend.

Several other HCSO deputies then arrived on scene. Upon information and belief, Deputy Overby was among them; he and Sergeant Collins wanted to search the Silverado but believed they lacked a lawful basis to do so; and he and Sergeant Collins discussed strategies for developing probable cause so that they could search the Silverado.

After a substantial delay,[1] the HCSO deputies thoroughly searched the Silverado. In the front-left wheel well, they found a pistol. Inside the cab, they found a digital scale and more than two ounces of alleged methamphetamine in the center console. In Wood's wallet, they found cash.[2]

---

[1] A motion to suppress the search of the truck based on the Supreme Court's holding in Rodriguez v. United States, 575 U.S. 348 (2015) and another, related ground is being filed contemporaneously with the instant motion.

[2] Wood explained on scene that he had a legitimate job, that he had earned the money in his wallet through his job, and that he had been saving it to serve as bail money. Wood had an outstanding arrest warrant due to his failure to appear on an unrelated state trespassing case. He admitted that he knew he had an outstanding warrant for

5

After the HCSO deputies searched the Silverado, they obtained the homeowner's permission to leave the Silverado at 380 Community Road, which is approximately 5.3 miles away from 141 Capitol Hill Road. Google Maps Directions (attached hereto as Exhibit 4). They left the Silverado at 380 Community Road and transported Wood to the Harnett County Sheriff's Office. At the Harnett County Sheriff's Office, HCSO Deputy Overby and ATF Special Agent Alex Crumley brought Wood into an interview room and attempted to interview him.

On August 7, with Wood still in the Harnett County Jail, Deputy Overby applied for a warrant to search 141 Capitol Hill Road.[3] Exhibit 1 at 1-4. Attached to his application for a search warrant was an affidavit bearing his signature. Id. at 5-7. A notary's signature is adjacent to Deputy Overby's, under a valediction that says, "[s]worn and subscribed before me." The notary's signature indicates that Deputy Overby provided the testimony in the affidavit under oath. Id.

The affidavit purports to set out facts sufficient to establish probable cause to believe that these items of evidence were inside 141 Capitol Hill Road on August 7:

1. Controlled Substances, including, specifically, Methamphetamine;

2. Drug paraphernalia, including scales, bags, cutting agents, and tape;

3. United States Currency, including assets purchased using ill-gotten gains;

---

his arrest. He added that he had been saving money so that he could bail himself out promptly after turning himself in.

[3] The warrant incorrectly lists the location of the place to be searched as 141 Capitol Hill Drive. However, the application included a photo of – and directions to – the place to be searched. That photo and the directions thereto both appear to be consistent with the description and location of 141 Capitol Hill Road.

6

4. Books, records, receipts, notes, ledgers, and other documents relating to the distribution of controlled substances;

5. Items of personal property tending to show ownership, dominion, or control of the premises;

6. Letters, checkbooks bills, lease agreements, and other paper writings;

7. Records of illegal drug activities, documents, photographs, and other evidence of drug trafficking;

8. Personal computers, laptops, tablets, cellular devices, and other electronic media containing evidence of obtaining or selling controlled substances, including evidence of related money laundering; and

9. Weapons, including firearms.

Exhibit 1 at 7, 3. The first paragraph of the affidavit summarizes Deputy Overby's training and experience. Exhibit 1 at 5. The second paragraph explains the basis and purpose of the affidavit. Id. at 5-6.

The third paragraph describes the August 6, 2025 traffic stop which resulted in Wood's arrest at 380 Community Road. In that paragraph, Overby describes the Silverado as a "red in color Chevy truck." Id. at 6. He explains that HCSO deputies searched the Silverado following the traffic stop. Id. The fourth paragraph summarizes Wood's post-arrest interview at the Harnett County Sheriff's Office. Id. During that interview, Deputy Overby explains, Wood admitted that he has ammunition stored in a vehicle located at his home. Id. However, Wood also correctly pointed out that it was not illegal for him to possess ammunition. Id.

7

The fifth paragraph provides the only facts in the affidavit linking 141 Capitol Hill Road to illegal activity. Deputy Overby testifies that a CI "was at Mark Wood Jr.'s home locate[d] at 141 Capitol Hill [Rd.] Lillington" on July 29, 2025. Id. The affidavit does not expound on the basis for Overby's belief that 141 Capitol Hill Road is Wood's home. However, it avers that during his July 29 visit to 141 Capitol Hill Road, the CI claims to have "observed several ounces of methamphetamine kept inside a vehicle." Id. at 6-7.[4]

Notably, Overby participated in the July 29 controlled purchase. He knew that the "vehicle" in which the CI saw the "several ounces of methamphetamine" was the red Chevrolet Silverado. He also knew that the vehicle in which the CI saw the methamphetamine was the same vehicle law enforcement had searched the previous day at 380 Community Road. Yet the affidavit fails to make that connection clear, largely because the language Deputy Overby chose to describe the Silverado in paragraph 3 of the affidavit ("red in color Chevy truck") differs significantly from the language he chose to describe the Silverado in paragraph 5 ("a vehicle").

The Affidavit's sixth paragraph indicates that the CI had given law enforcement information about drug offenses, a fact that was already apparent from the previous paragraph. Id. It states that the CI was familiar with the sale of

---

[4] Paragraph 5 also states that the CI said "he had observed Mark Wood Jr. in possession of firearms within the past month." However, the affidavit does not say where or when – other than the fact that it was sometime within the past month – the CI saw Wood with firearms. And nothing in the discovery materials provided by the government indicates that the CI saw Wood in possession of any firearms at 141 Capitol Hill Road during the 30-day period preceding the search warrant.

8

controlled substances, specifically methamphetamine, through past experiences. Again – a fact that was apparent from the previous paragraph. It adds that the CI had been deemed credible and reliable, presumably by law enforcement. Id. at 7. Finally, its sixth paragraph states that the CI had conducted multiple controlled purchases of narcotics in the past. Id.

The Affidavit's seventh paragraph explains that law enforcement officers found methamphetamine and a handgun on Wood's person and in his vehicle during a traffic stop that occurred elsewhere on February 21, 2025. That paragraph does not link 141 Capitol Hill Road to illegal activity. The eighth paragraph provides the results of a computerized criminal history search and the ninth paragraph concludes that the affidavit had set out sufficient facts to establish probable cause to believe the evidentiary items listed above were located at 141 Capitol Hill Road on the date of submission.

Nothing in the affidavit explains why Deputy Overby believed that drug paraphernalia, drug proceeds, documents relating to the distribution of methamphetamine, items tending to show ownership, dominion, or control over 141 Capitol Hill Road, paper writings, records of illegal drug activities, personal electronic devices containing evidence of drug trafficking, or weapons were located in 141 Capitol Hill Road on August 7, 2025.

Despite Overby's contention that probable cause existed to believe methamphetamine was being stored in 141 Capitol Hill Road on August 7, nothing in the affidavit explains that Deputy Overby had reason to believe that Wood's

9

methamphetamine was consistently stored in the center console of the Silverado, not inside the home. Deputy Overby relied heavily on the July 29 controlled purchase in his probable cause showing, but omitted the fact that the CI had entered the home during the July 29 controlled purchase, had seen no contraband inside the home, then had to walk *back outside* to the Silverado, where he saw Wood's alleged narcotics stored inside the Silverado's center console.

Nothing in the affidavit makes clear that the only thing linking 141 Capitol Hill Road to illegal activity – the Silverado in which the CI saw several ounces of methamphetamine – had been thoroughly searched the previous day, that the methamphetamine inside of it had already been found, or that Deputy Overby had reason to believe the Silverado was no longer located at 141 Capitol Hill Road.[5]

Despite all those facts undermining probable cause to believe methamphetamine was being stored in 141 Capitol Hill Road, Deputy Overby swore that probable cause existed. The state judge issued the search warrant, and Deputy Overby's hunch that methamphetamine was being stored in 141 Capitol Hill Road turned out to be correct. Exhibit 1 at 8-9. When HCSO deputies searched 141 Capitol Hill Road on August 7, they found methamphetamine, a small quantity of marijuana, a digital scale, plastic bags, and ammunition in a safe inside the house.

---

[5] By the time HCSO deputies executed the search warrant on August 7, the Silverado had, in fact, been returned to 141 Capitol Hill Road. But there is no evidence to suggest that the Silverado had been returned to 141 Capitol Hill Road before the affidavit was submitted. And even if it had been, there is no evidence to suggest Deputy Overby was aware of that fact at the time he submitted the Affidavit.

<u>**ARGUMENT**</u>

Hindsight is 20/20. If the discovery of contraband during a search could cure defects in a search warrant that was constitutionally infirm at the time it was issued, the exclusionary rule would be toothless. For that reason, reviewing courts evaluating the validity of a search warrant look only to the facts and circumstances presented to the magistrate before the warrant was issued. "[I]tems of evidence that emerge after [a] warrant is issued have no bearing on whether or not [the] warrant was validly issued." <u>Maryland v. Garrison</u>, 480 U.S. 79, 85 (1987). Thus, "the discovery of contraband cannot validate a warrant [which was] invalid when issued." <u>Id</u>.

## I. <u>Summary of Argument</u>

Here, the search warrant was facially invalid when issued because it was not supported by probable cause. The search warrant was unsupported by probable cause for three reasons. First, the affidavit presented to the issuing judge failed to establish a nexus between criminal activity and the interior of the home. Second, the affidavit failed to establish an adequate nexus between Wood and the home. Third, the information in the affidavit was stale.

Alternatively, even if one could somehow divine probable cause within the four corners of the affidavit, the state judge's probable cause determination was undermined by the omission of material facts from the affidavit. Deputy Overby omitted those facts intentionally or recklessly and, had they been included, the affidavit would not have supported probable cause. Based on these omissions, under

11

Franks v. Delaware, the search of Wood's home violated his Fourth Amendment rights. 438 U.S. 154 (1978).

### II.   The Search Warrant Was Not Supported by Probable Cause

The search warrant was overbroad because it failed to allege any facts connecting the interior of the home to illegal activity. The Government cannot rely on the Fourth Circuit's drug-trafficker-residence cases to manufacture the necessary connection indirectly, through Wood, because the affidavit failed to establish that 141 Capitol Hill Road was, in fact, Wood's residence. Finally, the information in the affidavit was stale because automobiles are highly mobile and drugs are easily disposable. The mere fact that an informant had seen methamphetamine stored inside a truck parked at 141 Capitol Hill Road nine days before the search warrant was issued did not amount to probable cause to believe the truck and/or the methamphetamine would still be there on the date the search warrant was issued.

#### A.  Legal Standards

The Fourth Amendment protects against "unreasonable searches and seizures." U.S. Const. amend. IV. The "ultimate touchstone of the Fourth Amendment is 'reasonableness.' " Riley v. California, 573 U.S. 373, 381 (2014). In that regard, warrantless searches are generally unreasonable, see Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973), and a search warrant must be supported by probable cause, United States v. Harris, 403 U.S. 573, 577 (1971). Probable cause is "a fluid concept – turning on the assessment of probabilities in particular factual contexts – not readily, or even usefully, reduced to a neat set of legal rules." Illinois v. Gates, 462

12

U.S. 213, 232 (1983). Generally, probable cause exists "where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found in the place to be searched." United States v. Blauvelt, 638 F.3d 281, 287 (4th Cir. 2011) (internal quotations omitted).

The task of the magistrate is "to make a practical, common-sense decision whether, given" the totality of the "circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Gates, 462 U.S. at 238. And the duty of the reviewing court is "to ensure that the magistrate had a substantial basis for … conclud[ing] that probable cause existed." Id. at 238-239 (internal quotation omitted). When considering a challenge to a search warrant affidavit, the reviewing court must be able to conclude that "[s]ufficient information [was] presented to the magistrate to allow for the exercise of independent judgment." United States v. Lalor, 996 F.2d 1578, 1580-81 (4th Cir. 1993).

### B. The Affidavit Failed to Establish A Nexus Between Contraband And the Interior of the Home

A search warrant is constitutionally overbroad if it authorizes a search of areas for which there is no established probable cause. See Garrison, 480 U.S. at 84-85. The Fourth Amendment's Warrant Clause "categorically prohibits the issuance of any warrant except one 'particularly describing the place to be searched, and the persons or things to be seized.' " Id. (quoting U.S. Const. amend. IV). The "manifest purpose

13

of this particularity requirement was to prevent general searches." <u>Id</u>. "By limiting the authorization to search to the specific areas and things for which there is probable cause to search," the particularity requirement "ensures that the search will be carefully tailored to its justifications and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." <u>Id</u>.

The scope of a lawful search is therefore "defined by the object of the search and the places in which there is probable cause to believe that it may be found." <u>United States v. Ross</u>, 456 U.S. 798, 824 (1982). The Supreme Court illustrated those twin limitations on the scope of a lawful search like so: "probable cause to believe that a stolen lawnmower may be found in a garage will not support a warrant to search an upstairs bedroom," – i.e., the scope of a search is defined by the object of the search – and "probable cause to believe that a container placed in the trunk of a taxi contains contraband or evidence does not justify a search of the entire cab," – i.e., the scope of a search is limited to the places in which there exists probable cause to believe the object of the search may be found. <u>Id</u>.

As the Supreme Court has repeatedly emphasized, the "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." <u>Payton v. New York</u>, 445 U.S. 573, 585 (1980) (internal quotation omitted). Thus, the Fourth Amendment does not permit the Government to convert probable cause for a discrete place – a vehicle parked in a home's driveway – into a roving license to search a different, more private place – the interior of the home.

Here, the warrant authorized law enforcement officers to search inside the home located at 141 Capitol Hill Road even though the affidavit that supported it failed to evince any nexus between the interior of the home and illegal activity. The affidavit established, at most, probable cause to believe drugs were stored in the Silverado while it was parked in the driveway on July 29. But just as "probable cause to believe that a container placed in the trunk of a taxi contains contraband or evidence does not justify a search of the entire cab," probable cause to believe that the center console of the Silverado parked in the driveway of 141 Capitol Hill Road does not justify a search of every place within the entire parcel. Ross, 456 U.S. at 824.

The affidavit did not claim that drugs, paraphernalia, money, records, electronic devices, firearms, packing, scales, or any other evidence ever entered the house. It did not say that the CI went inside the house,[6] observed contraband inside the house, or saw Wood retrieve drugs from inside the house. It did not describe the interior of the house as a place being used to store, package, or sell drugs. The search warrant was therefore impermissibly overbroad because it authorized the search of an area for which there was no established probable cause – the interior of the home.

---

[6] The informant did, in fact, enter the house on July 29 and apparently saw no evidence of illegal activity there. That omission is discussed in greater detail infra Part III(B)-(C). For purposes of assessing the sufficiency of the affidavit to establish a nexus between the interior of the home and contraband or evidence, however, the absence of any facts demonstrating the informant went inside is what matters.

### C. The Affidavit Failed to Establish a Nexus Between the Interior of the Home and Wood

The Government will likely point to the Fourth Circuit's drug-trafficker-residence cases in a misplaced attempt to interpolate into the affidavit a spurious connection between criminal activity and the house. But those cases do not supply the necessary connection.

The Fourth Circuit has recognized that "the nexus between the place to be searched and the items to be seized may be established by the nature of the item and the normal inferences of where one would likely keep such evidence." United States v. Anderson, 851 F.2d 727, 729 (4th Cir. 1988). In keeping with that principle, the Court has added, "it is reasonable to suspect that a drug dealer stores drugs in a home to which he owns the key." United States v. Grossman, 400 F.3d 212, 218 (4th Cir. 2005). But the Fourth Circuit has cautioned that "this inference is contingent on the connection between the drug trafficker and his or her residence." United States v. Lull, 824 F.3d 109, 119 (4th Cir. 2016). To rely on the drug-trafficker-residence inference, therefore, the affidavit must evince that the place to be searched is the drug trafficker's residence. Id.

Here, the affidavit failed to establish that 141 Capitol Hill Road was Wood's residence. The only statement in the affidavit which purports to show Wood resided at 141 Capitol Hill Road is a conclusory one. In paragraph 5, Overby states that the informant "advised that he/she was at Mark Wood Jr.'s home locate[d] at 141 Capitol Hill [Road]" when he (the informant) saw the methamphetamine stored in the center console of the Silverado. Exhibit 1 at 5. That statement is ambiguous as to whether

the informant identified "141 Capitol Hill Road" as "Mark Wood Jr.'s home" or Overby merely asserted that conclusion. And apart from that bald assertion, the affidavit supplied no independent facts showing that Wood lived at that address.

To be sure, "probable cause may be founded upon hearsay and information received from informants." United States v. DeQuasie, 373 F.3d 509, 518 (4th Cir. 2004). But courts have never relied on such information blindly. Prior to 1983, courts employed a rigid two-prong test, known as the Aguilar-Spinelli test, to determine whether a search warrant affidavit that relied on an informant's tip passed constitutional muster. To sustain a determination of probable cause, both prongs had to be independently satisfied. See Gates, 462 U.S. at 228-29 (noting that the lower court had understood Spinelli to mean that an informant's tip had to "satisfy each of two independent requirements before it could be relied upon. First, the affidavit had to adequately reveal the informant's "basis of knowledge," – i.e., "the particular means by which he came by the information" reported in the affidavit. Second, the affidavit "had to provide facts sufficiently establishing either the 'veracity' of the affiant's informant, or, alternatively, the 'reliability' of the informant's report in this particular case").

First, the affidavit had to set forth the informant's or declarant's "basis of knowledge." Id. This prong required that the magistrate must be informed of the underlying basis of the informant's information. Aguilar v. State of Texas, 378 U.S. 108, 114 (1964), abrogated by Gates, 462 U.S. 213. Requiring the affiant to disclose the basis of the informant's knowledge is important because it provides at least some

17

assurance that the informant had personal knowledge of the information asserted in the affidavit; and that he was not misrepresenting a "suspicion, belief, or mere conclusion" as a statement of fact. Id.

This "basis of knowledge" disclosure requirement arose from the Fourth Amendment's mandate that probable cause determinations be made by neutral and detached magistrates. Id. at 111. For a magistrate to perform this constitutionally mandated function in a meaningful way, courts reasoned, he must be apprised of "some of the underlying circumstances from which" the informant's or declarant's information was derived. Id. at 114. Without such disclosure, the magistrate cannot "judge for himself the persuasiveness of the facts relied on … to show probable cause" and must "necessarily accept[] without question the informant's suspicion, belief, or mere conclusion." Id. (internal quotations omitted). Without such disclosure, "the inferences from the facts which lead to the" search warrant would "be drawn not by a neutral and detached magistrate, as the Constitution requires, but instead, by a police officer engaged in the often competitive enterprise of ferreting out crime" or "by an unidentified informant." Id. at 115. The "basis of knowledge" disclosure requirement thus ensures magistrates do not "serve merely as a rubber stamp for the police." Id. at 111.

Second, the affidavit had to establish the informant's "veracity." This prong comprised two distinct components: "veracity" and "reliability." The former related to the informant's credibility as a general matter. It required the affiant to present the magistrate with facts supporting the informer's credibility. Id. at 114. An informant's

reputation in his community, for example, may be relevant to his general "veracity." Gates, 462 U.S. at 233. So too might an informant's track record of supplying "accurate (corroborated) information." United States v. Gondres-Medrano, 3 F.4th 708, 716-17 (4th Cir. 2021). But where an affidavit fails to disclose the "underlying circumstances from which the [affiant] concluded that the informant … was 'credible' or his information 'reliable,'" the affidavit fails to establish the informant's veracity. Aguilar, 378 U.S. at 114-15. Thus, conclusory statements by an affiant that an informant is "credible" and "reliable" do not establish the informant's veracity.

By contrast, the "reliability" component focused on the specific information the informant provided. It required the affiant to articulate indicia supporting the reliability of the information itself. Independent corroboration of information the informant contributed to the affidavit's showing of probable cause, for example, is relevant to the "reliability" of the information the informant provided. Gates, 462 U.S. at 241-42.

These twin burdens of proof, which together composed the second prong of the Aguilar-Spinelli framework, aimed to ensure that search warrants which relied on hearsay would only issue where the trustworthiness of both the informant and the information he provided had been established in the affidavit.

Under the Aguilar-Spinelli framework, an informant's (1) basis of knowledge and (2) veracity were each treated as a necessary condition precedent to the issuance of a search warrant. Just as reasonable doubt with respect to any necessary element of a criminal offense is fatal to the offense charged in the context of a jury trial, any

deficiency in an affiant's probable cause showing with respect to either of the <u>Aguilar-Spinelli</u> elements was fatal to the search warrant. <u>See</u> <u>Gates</u>, 462 U.S. at 228-29.

In <u>Gates</u>, the Supreme Court clarified that an informant's "basis of knowledge" and "veracity" should not be treated as independent elements, but rather, as "intertwined issues." <u>Id</u>. at 230. Under this totality-of-the-circumstances approach, "an informant's 'veracity,' 'reliability,' and 'basis of knowledge'" remain key considerations in evaluating the value of the information he provided. <u>Id</u>. However, "a deficiency in one [of the <u>Aguilar-Spinelli</u> factors] may be compensated for, in determining the overall [value] of a tip," by an unusually "strong showing as to the other," or by some other indicia of reliability, such as independent police corroboration. <u>Id</u>. at 233. For example, if "a particular informant is known for the unusual reliability of his predictions of certain types of criminal activities in a locality, his failure, in a particular case, to thoroughly set forth the basis of his knowledge" is not "an absolute bar to a finding of probable cause" under <u>Gates</u>. <u>Id</u>. Importantly, however, the <u>Gates</u> formulation was not intended to authorize "an overly-permissive attitude towards police practices in derogation of the rights secured by the Fourth Amendment." <u>Id</u>. at 241.

Although <u>Gates</u> rejected rigid application of the two-pronged Aguilar-Spinelli test, the informant's basis of knowledge, veracity, and reliability remain highly relevant guideposts in assessing the value of an informant's report. <u>Gates</u>, 462 U.S. at 230. A deficiency in one of the <u>Aguilar-Spinelli</u> factors still requires a particularly strong showing as to the other. Thus, even post-<u>Gates</u>, "a judicial officer's assessment

of probable cause" still "must include a review of the 'veracity' and 'basis of knowledge' of persons supplying hearsay information." <u>United States v. Perez</u>, 393 F.3d 457, 461-62 (4th Cir. 2004).

In the instant case, the conclusory statement that "141 Capitol Hill Road" was "Mark Wood Jr.'s home" in paragraph 5 of the affidavit did not establish a reliable factual nexus between contraband and the home. It is unclear whether the informant actually told officers that 141 Capitol Hill Road was Wood's home, or whether Overby merely paraphrased the informant's account of being at the address and added the conclusion that the address was Wood's home. Either way, the affidavit provides no basis for that assertion.

The affidavit does not provide the declarant's basis of knowledge. It does not say that the informant had been inside the residence, that Wood had admitted to the informant that he lived there, that the informant had seen Wood inside the home, or that the informant saw mail, utilities, or personal effects tying Wood to the home. In the same vein, the affidavit does not say that law enforcement independently corroborated that the home was Wood's residence through surveillance, records checks, or any other source of information. Moreover, if the informant came by the information about Wood's residency indirectly, he did not explain why his sources were reliable. The statement in paragraph 5 therefore asks the magistrate to accept an unexplained conclusion about residency without any factual basis to support it. Stated differently, the affidavit makes no attempt to establish the declarant's basis of knowledge or the reliability of his conclusion about Wood's residency.

To be sure, paragraph 6 touches on the informant's veracity; but the assertions in paragraph 6 concerning the informant's generalized history of providing drug-related information, familiarity with drug sales, and involvement in previous controlled purchases are constitutionally insufficient to establish his veracity.

Probable cause for the issuance of a search warrant must be determined by a neutral and detached magistrate, rather than by a law enforcement officer engaged in the competitive enterprise of ferreting out crime. Aguilar, 378 U.S. at 115. An officer's conclusory assertion that an informant is "reliable" or "credible" is insufficient to establish the informant's veracity because it attempts to substitute the officer's judgment for that of the magistrate.

The affidavit's claim that the informant had given law enforcement officers information concerning violations of the North Carolina Controlled Substances Act and that he was familiar with the sale of controlled substances, including specifically methamphetamine, through his past experiences are vague and conclusory. Mere familiarity with drug sales in general is not a substitute for a showing of how the informant obtained specific, residency-related information in this case. Moreover, Overby's assertion that the informant has conducted multiple actionable controlled purchases of narcotics in the past shows, at most, that the informant can follow instructions (e.g. about where to go and from whom to purchase narcotics). It does not show that he has a reputation within his community "for the unusual reliability of his predictions" required to establish his general veracity. Gates, 462 U.S. at 233.

Even if these unexceptional assertions about the informant's background and history of conducting controlled purchases could establish his veracity, which they do not, the affidavit would still be deficient. Under Gates, "a deficiency in one [of the Aguilar-Spinelli factors] may be compensated for, in determining the overall [value] of a tip, by a strong showing as to the other," or by some other indicia of reliability, such as independent police corroboration. Id. Here, the affidavit contained no "other indicia of reliability" tying Wood's residency to 141 Capitol Hill Road, such as independent police corroboration. And the facts set out in paragraph 6 concerning the informant's veracity are not so "strong" as to compensate for the complete absence of any information concerning the basis of his knowledge.

Indeed, it is not even clear that the informant told law enforcement officers that "141 Capitol Hill Road" was "Wood Jr.'s home." As noted above, the affidavit is ambiguous as to whether the informant identified 141 Capitol Hill Road as Wood's residence or Overby merely asserted that conclusion. In either case, the issuing judge's failure to resolve that ambiguity shows that his assessment of probable cause did not include the required "review of the 'veracity' and 'basis of knowledge' of persons supplying hearsay information." Perez, 393 F.3d at 461-62.

The conclusory statement in paragraph 5 that "141 Capitol Hill Road" was "Wood Jr.'s home" is not supported by sufficient information to establish (1) how the declarant knew 141 Capitol Hill Road was Wood's residence – i.e., his basis of knowledge – or (2) the declarant's general veracity or the reliability of the information

concerning Wood's residency. Paragraph 5 is ambiguous as to who the declarant was, so one cannot assume that paragraph 6 establishes the declarant's veracity.

Even if the affidavit were clear that the informant was the declarant, which it is not, the vague information in paragraph 6 is not sufficient to establish the informant's general veracity.

Furthermore, even if paragraph 6 could establish the informant's general veracity, which it does not, the information concerning the informant's veracity was not strong enough to offset the complete absence of any information showing how he knew Wood resided at 141 Capitol Hill Road (i.e. the basis of his knowledge). The affidavit also contained no other indicia of reliability, such as independent police corroboration, concerning Wood's residency. Under the totality of the circumstances, the affidavit failed to establish that Wood, in fact, resided at 141 Capitol Hill Road.

In sum, although it is reasonable to infer that a drug dealer stores drugs in a home to which he owns the key, Grossman, 400 F.3d at 218, nothing in the affidavit suggests law enforcement officers had found a key to 141 Capitol Hill Road in Wood's possession. The issuing judge therefore could not rely on the drug-trafficker-residence inference because the affidavit failed to establish that the place to be searched was, in fact, Wood's residence, see Lull, 824 F.3d at 119. Accordingly, it would not have been reasonable for the judge who issued the search warrant to infer that Wood stored drugs there.

Because the scope of a lawful search is limited to the places in which there is probable cause to believe the object of the search may be found, the affidavit in this

case had to establish probable cause to believe contraband would be found inside the home. The affidavit failed to do that either (1) directly, by establishing, for example, that the informant had seen contraband inside the home, or (2) indirectly, by establishing that Wood resided in the home. The warrant was therefore overbroad as to the interior of the home.

### D. The Information in the Affidavit Was Stale

"[T]ime is a crucial element of probable cause." United States v. McCall, 740 F.2d 1331, 1335 (4th Cir. 1984). Probable cause must exist at the time the warrant issues, not at some earlier point in time. See id. A valid search warrant may issue only upon allegations of "facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time. Whether the proof meets this test must be determined by the circumstances of each case." Sgro v. United States, 287 U.S. 206, 210-11 (1932).

The Fourth Circuit evaluates staleness in a practical, fact-specific manner. "[T]he vitality of probable cause cannot be quantified by simply counting the number of days between the occurrence of the facts supplied and the issuance of the affidavit." McCall, 740 F.2d at 1336 (quotation omitted). Rather, courts consider "the nature of the unlawful activity, the length of the activity, and the nature of the property to be seized." Id.

Here, the narcotics the informant observed were not stored inside a fixed residence. They were stored in the center console of a vehicle allegedly parked in a driveway nine days before the search warrant was issued. The affidavit did not

describe an ongoing drug-distribution operation happening inside the home. It did not describe repeated drug sales from inside the home. It did not describe surveillance showing ongoing drug activity in the driveway of 141 Capitol Hill Road. It did not say the informant had seen drugs there multiple times. It did not say the Silverado had been seen there repeatedly. It did not say that officers had confirmed the Silverado was there at the time the warrant was sought. The only observation connecting the curtilage of 141 Capitol Hill Road to drugs was a single, isolated observation of drugs stored in the center console of the Silverado, made nine days before the warrant was sought.

That distinction is important because automobiles are highly mobile. <u>See</u>, <u>e.g.</u>, <u>California v. Carney</u>, 471 U.S. 386, 390 (1985) (noting "the ready mobility" of automobiles). If an automobile is readily movable for purposes of the Fourth Amendment, then an affidavit relying on a nine-day-old observation of contraband in an automobile must provide some reason to believe that the vehicle and contraband remain at the location to be searched. The affidavit in this case did not. It did not say that the Silverado was still parked on the premises on August 7, that it was normally kept at 141 Capitol Hill Road, that it was disabled or immobile, that officers had seen it at 141 Capitol Hill Road subsequent to the July 29 controlled purchase, or that the Silverado was registered to 141 Capitol Hill Road.

The nine-day lapse is especially significant because the alleged contraband was narcotics. Drugs are readily moved, sold, consumed, or discarded. The Silverado in which they were allegedly stored could have left the property minutes after the

informant's observation, and the affidavit supplied no basis to assume that the drugs had not been moved, sold, consumed, or discarded during the intervening nine days.

The August 6 traffic stop did not refresh or corroborate the stale observation in paragraph 5 of the Affidavit. That traffic stop occurred at a different location, more than 5 miles away from 141 Capitol Hill Road. The Affidavit did not say that the red Chevy truck had come from 141 Capitol Hill Road or was heading to 141 Capitol Hill Road. Without those facts, the August 6 traffic stop showed only that drugs were found in a red Chevy truck operated by Wood at a later time; it did not establish that the same vehicle in which the informant had seen methamphetamine on July 29 remained on the property. If anything, paragraph 3 *undercuts* the idea that the vehicle remained at 141 Capitol Hill Road with drugs in it on August 7.

The warrant's staleness problem reinforces its nexus problems. Even if the informant's veracity were beyond reproach and even if the informant saw narcotics in a vehicle on the property nine days earlier, the affidavit did not establish a fair probability that those narcotics would still be there when the warrant was issued on August 7. And because the informant did not see drugs inside the house, the stale vehicle observation could not support a timely inference that drugs would be found inside the house. The affidavit's probable cause showing therefore depends on an impermissible chain of assumptions: (1) that the Silverado remained on the property, (2) that the drugs remained in the Silverado, (3) that the Silverado was connected to the home, (4) that the home was connected to Wood, and (5) that evidence was

therefore likely to be found inside the home. Binding precedent permits probable cause to rest on common sense inferences, not on unsupported speculation.

In sum, the affidavit's timing defect is not a technical objection. It goes to the heart of the probable cause determination. The warrant was issued based in part on a nine-day-old observation of contraband in a movable vehicle, without any corroboration that the vehicle or the contraband remained at 141 Capitol Hill Road. That stale information did not provide a substantial basis for the issuing judge to conclude probable cause existed to believe contraband was being stored inside the home on August 7.

### E. The Affidavit Did Not Give the Issuing Judge a Substantial Basis for Concluding Probable Cause Existed

The affidavit's strongest facts show, at most, that drugs were found twice in vehicles operated by Wood and that an informant claimed to have seen drugs in a vehicle parked at 141 Capitol Hill Road nine days earlier. Those facts do not establish a fair probability that drugs or evidence would be found inside the home.

The affidavit did not connect the August 6 traffic stop to the home. It did not connect the vehicle in which the informant saw narcotics to the property. It did not connect the alleged drugs in that vehicle to the interior of the home. It did not establish that the home was used to store, package, sell, or hide narcotics. It did not provide facts establishing that the home was, in fact, Wood's residence. And it did not provide any basis to assume that the vehicle or the contraband allegedly seen nine days earlier would still be present when the warrant was issued.

Under <u>Gates</u>, <u>Sgro</u>, and Fourth Circuit cases such as <u>Lalor</u> and <u>McCall</u>, probable cause must be timely and tied to the specific place to be searched. The information in the affidavit here was neither. The warrant rested on suspicion, assumption, stale information, and layered, spurious inferences. Because the affidavit failed to establish a contraband-residence nexus, failed to establish a defendant-residence nexus, and relied on stale information concerning methamphetamine allegedly seen in a mobile vehicle nine days earlier, the issuing judge lacked a substantial basis to conclude that probable cause existed to search the interior of the home on August 7.

### III. <u>Alternatively, The Search Of the Home Must Be Suppressed Because Overby's Material Omissions Misled the Judge About The Only Nexus Between Alleged Drug Activity and the Home</u>

In violation of law plainly established by the United States Supreme Court and the Fourth Circuit, Deputy Overby purposely and recklessly omitted material information from his probable cause affidavit. These material omissions were designed to mislead or made in reckless disregard of whether they would mislead the issuing judge. They went straight to the heart of the probable cause determination because they bore directly upon whether probable cause existed to believe (1) the Silverado contained contraband on August 7, (2) the Silverado would be found at 141 Capitol Hill Road on August 7, and (3) contraband would be found inside the home. Deputy Overby's intentional and reckless omissions therefore require the suppression of all evidence resulting from the search of 141 Capitol Hill Road, under the principles set out in <u>Franks</u> and its progeny.

### A. Legal Standards

The Fourth Amendment provides that "[n]o warrants shall issue, but upon probable cause, supported by Oath or Affirmation." U.S. Const. amend. IV. In <u>Franks</u>, the United States Supreme Court observed that this demand for "a factual showing sufficient to comprise probable cause" assumes "there will be a *truthful* showing … in the sense that the information put forth is believed or appropriately accepted by the affiant as true." 438 U.S. at 164-65. Thus, where an affiant's "perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." <u>Id</u>. at 156.

<u>Franks</u> thus establishes a two-prong test as to what a criminal defendant must show when challenging the veracity of statements made in an affidavit supporting a search warrant. The defendant has the burden to establish both prongs of the test by a preponderance of the evidence. <u>Id</u>. If both prongs are met, the search warrant must be voided and the fruits of the search excluded. <u>Id</u>. at 155-56.

Under the first prong – the "intentionality" prong – the defendant must show that "a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit." <u>Id</u>. An officer acts with reckless disregard when he fails to "inform the magistrate of facts she

30

subjectively knew would negate probable cause." <u>United States v. Haas</u>, 986 F.3d 467, 475 (4th Cir. 2021).

Under the second prong – the "materiality" prong – the defendant must show that, "with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause." <u>Franks</u>, 438 U.S. at 156. In other words, the defendant must show that, without those false statements, the affidavit cannot support the finding of probable cause. <u>United States v. McKenzie-Gude</u>, 671 F.3d 452, 462 (4th Cir. 2011).

The two-pronged <u>Franks</u> test applies to not only to cases "in which an agent includes affirmatively false statements in a warrant affidavit," but "also when an agent *omits* relevant facts from the affidavit." <u>Lull</u>, 824 F.3d at 114. But, as the Fourth Circuit clarified in <u>Lull</u>, "[u]nderstandably, the defendant's burden in showing intent is greater in the case of an omission" than it is in the context of an affirmative misrepresentation "because '[a]n affiant cannot be expected to include in an affidavit every piece of information gathered in the course of an investigation.'" <u>Id</u>. at 115.

Accordingly, "[t]o establish entitlement to a <u>Franks</u> hearing based on information omitted from the warrant affidavit," the defendant is "required to make a 'substantial preliminary showing,'" <u>United States v. Jones</u>, 942 F.3d 634, 640 (4th Cir. 2019), "that the omissions were 'designed to mislead, or … made in reckless disregard of whether they would mislead' and that the omissions were material, meaning that their 'inclusion in the affidavit would defeat probable cause.'" <u>United States v. Clenny</u>, 631 F.3d 658, 664 (4th Cir. 2011).

Notably, a showing that an officer was merely negligent, or that the omission was simply an innocent mistake, is insufficient to warrant suppression. See Franks, 438 U.S. at 171. Moreover, "the significance – or insignificance – of a particular omission to the determination of probable cause may inform [the Court's] conclusion regarding the agent's intent." Lull, 824 F.3d at 117. A significant omission can thus support an inference that the affiant acted intentionally, knowingly, or recklessly. Id.

Critically, "the defendant cannot rely on a purely subjective disagreement with how the affidavit characterizes the facts." United States v. Moody, 931 F.3d 366, 370 (4th Cir. 2019). Because "warrant affidavits are 'normally drafted by nonlawyers in the midst and haste of a criminal investigation,' … [t]hey must be interpreted in a commonsense manner, neither held to the standard of what judges or lawyers feel they would have written if given the opportunity nor 'judged as an entry in an essay contest.' " Id. at 372.

A showing of reckless disregard "is just as demanding." Id. at 371. "[R]eckless disregard in the Franks context requires a showing that the affiant personally recognized the risk of making the affidavit misleading." United States v. Pulley, 987 F.3d 370, 377 (4th Cir. 2022). "[M]ere conclusory allegations" are not sufficient. Moody, 931 F.3d at 371. However, if the affiant's material, intentional or reckless omissions are established by a preponderance of the evidence, then "the warrant 'must be voided' and evidence or testimony gathered pursuant to it must be excluded." United States v. Colkley, 899 F.2d 297, 300 (4th Cir. 1990).

### B. Deputy Overby Purposely or Recklessly Omitted Material Information from the Probable Cause Affidavit

Deputy Overby purposely or recklessly omitted three key facts from his affidavit. These omissions were designed to mislead, or made in reckless disregard of whether they would mislead:

- Less than 24 hours earlier, the Silverado had been thoroughly searched and the drugs inside of it had been seized;

- After the search, the Silverado had been left at 380 Community Road; and

- Before allegedly seeing drugs stored in the Silverado's center console during the July 29 controlled purchase, the informant had gone inside the house, where he allegedly met with Wood, but had to come *back outside* to complete the controlled purchase.

These facts were knowingly and intentionally, or recklessly, omitted from Deputy Overby's affidavit, and their inclusion in the affidavit would have defeated probable cause.

### C. The Omissions Were Material, and They Were Designed to Mislead, or Made in Reckless Disregard of Whether They Would Mislead

Deputy Overby knowingly and intentionally omitted those key facts. At minimum, he omitted them with reckless disregard for whether their absence would mislead the issuing judge. The crux of the probable cause determination for the search warrant turned on whether probable cause existed to believe that contraband would be found inside the home on August 7. Against that backdrop, Deputy Overby's omissions could not have been more significant to the probable cause determination.

33

### i. Deputy Overby Omitted That Law Enforcement Had Already Searched the Same Vehicle and Seized Narcotics From It Less Than Twenty-Four Hours Before Seeking the Home Warrant

Deputy Overby omitted from the affidavit the fact that law enforcement had searched the vehicle in which the informant saw narcotics, and had already seized the narcotics that were stored inside it, less than twenty-four hours before he submitted the affidavit.

That omission is significant because the affidavit relied on the informant's nine-day-old observation of several ounces of methamphetamine in the center console of "a vehicle" parked at 141 Capitol Hill Road. Exhibit 1 at 5-6. As discussed above, the probable cause determination hinges on whether "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Gates, 462 U.S. at 238. Here, the particular place to be searched was the interior of the home located at 141 Capitol Hill Road. The only fact in the affidavit connecting 141 Capitol Hill Road to illegal activity was the fact that the informant allegedly saw drugs in the center console of the Silverado during the July 29 controlled purchase. The fact that the Silverado had been thoroughly searched on August 6, and the drugs inside it had already been recovered by law enforcement, directly undermines the affidavit's central premise: that the narcotics seen in the Silverado nine days earlier supplied probable cause to believe evidence would be found at the home on August 7.

The fact that Deputy Overby had over twenty (20) years of law enforcement experience at the time he submitted his affidavit, Exhibit 1 at 5, suggests that he understood the law of probable cause, and that he understood the impact his omission

concerning the connection between the vehicle in which the informant saw drugs on July 29 and the vehicle law enforcement officers thoroughly searched on August 6 would have had on the probable cause determination. Deputy Overby's understanding of what is required to establish probable cause to obtain a search warrant supports that this omission was not the product of an innocent mistake. See, e.g., United States v. Somerlock, 602 F. Supp. 3d 791, 822-23 (D. Md. May 5, 2022) (affiant's clear understanding of what was required to obtain a search warrant pursuant to the relevant statute supported defendant's substantial preliminary showing as to the affiant's intent).

Upon information and belief, Deputy Overby participated in the July 6 traffic stop and was present when the Silverado was searched and the drugs were found. At minimum, he personally attempted to interview Wood at the Sheriff's Office immediately following Wood's arrest on August 6. These circumstances support an inference that Overby had actual knowledge of the search of the Silverado and of the seizure of the narcotics from inside it on August 6.

Deputy Overby also participated in the July 29 controlled purchase. The fact that he personally participated in the July 29 controlled purchase supports that he had actual knowledge of the fact that the vehicle in which the informant allegedly saw drugs being stored on that date was the same vehicle law enforcement officers searched – and from which they recovered the drugs – on August 6.

To be sure, Deputy Overby described the search of the Silverado and seizure of drugs on August 6 in the affidavit. Exhibit 1 at 6. He also described the July 29

controlled purchase in the affidavit. <u>Id</u>. at 6-7. But his word choice obscured the fact that the vehicle in which the informant allegedly saw drugs being stored on July 29 was the same vehicle law enforcement officers searched, and from which they seized the drugs, on August 6. This omission was not merely incomplete or sloppy drafting.

Specifically, paragraph 3 of the affidavit describes the August 6 search. Paragraph 5 describes the July 29 controlled purchase. In paragraph 3, Deputy Overby identified the Silverado specifically by color, make, and model. He called it "a red Chevy truck." <u>Id</u>. at 6. In paragraph 5, he identified the same Silverado only generically as "a vehicle." <u>Id</u>. at 6-7. That difference obscured the relationship between the July 29 controlled purchase and the August 6 traffic stop. Had Overby used the same description in both places, the issuing judge would have seen that the vehicle in which the informant allegedly saw drugs was the very same vehicle deputies had already located, searched, and cleared of seized narcotics before applying for permission to search the home.

Deputy Overby had significant law enforcement experience and presumably understood that a judge evaluating probable cause would want to know that the drugs described in the July 29 controlled purchase paragraph may already have been seized during the August 6 traffic stop. He personally participated in both events and therefore knew the two paragraphs involved the same vehicle. This is the kind of fact an officer with Deputy Overby's experience and personal knowledge would know negates, or at least materially undermines, probable cause.

These circumstances support the intentionality prong because Overby personally participated in both the July 29 controlled purchase and the August 6 traffic stop. The significance of the omission, Overby's extensive law enforcement experience, his personal knowledge of the information contained in the affidavit, and the fact that his word choice obscured the connection between the July 29 and August 6 events, support that Deputy Overby's omission was designed to mislead the issuing judge, or at least that Overby omitted the information in reckless disregard of whether it would mislead the issuing judge, into believe contraband was located at 141 Capitol Hill Road on August 7.

The omission also satisfies the materiality prong. A corrected affidavit would not simply say that the informant saw drugs in a vehicle nine days earlier. It would say that the same vehicle was later found and thoroughly searched by law enforcement less than 24 hours before the warrant application, and that narcotics were seized from it. Once that fact is inserted, the affidavit does not support an inference that the drugs allegedly seen in the center console nine days earlier remained available as evidence at 141 Capitol Hill Road. The corrected affidavit would instead show that the only concrete evidence linking 141 Capitol Hill Road to drug trafficking had already been located and seized before the warrant to search the home was sought.

### ii. Deputy Overby Omitted the Fact That He Had Good Reason To Believe That the Silverado Was No Longer At 141 Capitol Hill Road

Deputy Overby's second omission independently undermines probable cause. The affidavit's apparent theory was that the drugs allegedly seen in the Silverado parked in the driveway of 141 Capitol Hill Road during the July 29 controlled purchase created probable cause to search inside the home. But Overby omitted the fact that the same Silverado had been later stopped in the driveway of Wood's friend's residence, 5.3 miles away from 141 Capitol Hill Road, and had been left there after law enforcement searched it.

That omission matters because the affidavit used the Silverado as a bridge between the July 29 controlled purchase and the home to be searched. Without the omitted fact, the issuing judge might infer that the Silverado remained at 141 Capitol Hill Road. With the omitted fact included, that inference disappears. A corrected affidavit would show that, at the time Overby sought the warrant, he had good reason to believe the Silverado was *not* at 141 Capitol Hill Road at all. It had been left at another person's residence over five miles away less than twenty-four hours earlier.

In addition to the significance of the omission, Deputy Overby's law enforcement experience and personal knowledge support <u>Franks</u>'s intentionality prong. Deputy Overby personally participated in the July 29 and August 6 events. He knew where the Silverado had been left and when it had been left there. He knew the Silverado's location was not a trivial detail. An officer with his personal knowledge and extensive experience must have known that probable cause depended on the

Silverado's connection to 141 Capitol Hill Road. The fact that law enforcement had already located it elsewhere and left it there was obviously critical to the probable cause determination. Although a "defendant's burden in showing intent is greater in the case of an omission" than it is in the context of an affirmative misrepresentation, Lull, 824 F.3d at 115, the Fourth Circuit's demanding standard for omissions does not excuse an affiant's omission of facts he knew would defeat the magistrate's reason for authorizing the search.

Granted, the Silverado was, in fact, found at 141 Capitol Hill Road when law enforcement officers arrived to execute the search warrant. But that does not negate the intentionality of Overby's omission. There must have been some lag between Deputy Overby's submission of the search warrant application to the judge and the officers' arrival at 141 Capitol Hill Road to execute the ensuing search warrant. The fact that the Silverado was found at 141 Capitol Hill Road when officers arrived to execute the warrant does not prove that the Silverado was there at the time Deputy Overby submitted his probable cause affidavit. That the Silverado was located at 141 Capitol Hill Road later in the day does not establish that Overby's affidavit was not, in fact, misleading at the time he submitted it. Any inference that the Silverado was present when Deputy Overby applied for the search warrant would depend on impermissible speculation unmoored from any facts presented in his affidavit. See Garrison, 480 U.S. at 85 ("[I]tems of evidence that emerge after [a] warrant is issued have no bearing on whether or not [the] warrant was validly issued").

Furthermore, even assuming *arguendo* that the Silverado's presence when the officers arrived to execute the warrant could support the (impermissible) inference that the Silverado was moved from 380 Community Road to 141 Capitol Hill Road at some point in time *before* Deputy Overby submitted his search warrant application, there is nothing in the affidavit to suggest that Deputy Overby was subjectively aware of that fact. Accordingly, the Silverado's presence when the officers arrived to execute the search warrant does not negate Overby's intent to mislead, or reckless disregard for whether his omission would mislead, the judge who issued the warrant.

Deputy Overby's omission that he had good reason to believe the Silverado was no longer located at 141 Capitol Hill Road, and that it had been left the previous day at a friend's house, more than five miles away, was material. A corrected affidavit would tell the issuing judge that the only place where drugs were actually seen was the Silverado; that the Silverado had since been stopped and searched at a friend's residence 5.3 miles away; and that the Silverado had been left at that location after law enforcement searched it. Those facts sever the asserted, constitutionally-required connection between the drugs the informant allegedly saw in the Silverado's center console and the home to be searched. At most, a corrected affidavit would support a vehicle-centered theory of probable cause, not a search of the home's interior.

### iii. Deputy Overby Omitted the Fact That the Informant Had Entered the Home During the July 29 Purchase and Had Not Seen Any Contraband Inside the Home

During the July 29 controlled purchase, the informant allegedly went inside the home and met Wood there. But the purchase did not happen there. Instead, Wood and the informant allegedly left the home together, went outside to the Silverado that was parked in the driveway, and completed the transaction there. That is where the informant allegedly saw drugs stored in the Silverado's center console. Overby omitted this sequence of events from the affidavit.

This sequence of events is important because it undermines any notion that probable cause existed to believe drugs were stored inside the home. Homes are private places. An automobile parked in the driveway of a home affords less privacy than the interior of the home itself. From the perspective of a drug trafficker, the interior of a home is therefore a more propitious location for a drug deal than an automobile parked in the home's driveway because the home's walls provide at least some protection from surveillance by law enforcement.

The facts of the July 29 controlled purchase underscore that point. Law enforcement officers were able to conduct aerial surveillance of the July 29 controlled purchase because it allegedly took place in and around the Silverado parked in the driveway. By contrast, they were not able to conduct physical surveillance inside 141 Capitol Hill Road. The informant carried a surreptitious camera during the July 29 controlled purchase but, due to substandard camera work and battery conditions, failed to capture any footage from inside the home. He did capture audio, but the

41

audio is muffled and difficult to hear. The Government therefore has a stronger case as to the July 29 controlled purchase precisely because the purchase allegedly took place in the driveway rather than inside the home.

If Wood had had methamphetamine stored inside the home during the July 29 controlled purchase, he could have completed the transaction with the informant while he and the informant were inside the home. Indeed, it would have been logical for him to do so. The fact that Wood and the informant met inside the home, then went outside together to the Silverado to complete the transaction, coupled with the fact that the informant allegedly saw Wood's stash in the center console of the Silverado, supports an inference that Wood stored his drugs in the Silverado – not inside the house.

Deputy Overby's omission concerning the informant's entry into the home during the July 29 controlled purchase bore directly on whether probable cause existed to believe contraband would be found inside the home on August 7. The significance of that omission thus supports that Overby omitted that information knowingly and intentionally, or with reckless disregard for whether it would mislead the issuing judge into believing probable cause existed as to the interior of the home. See Lull, 824 F.3d at 117.

Moreover, Deputy Overby participated in the July 29 controlled purchase. The fact that he personally participated in the July 29 controlled purchase supports that he had actual knowledge of the fact the informant entered the home during the July

29 controlled purchase before coming back outside to complete the transaction in and around the Silverado parked in the driveway.

Furthermore, Overby's omission about the informant entering the home was not a fact he merely failed to include in the "midst and haste" of an investigation. Colkley, 899 F.2d at 300 (internal quotation omitted). He had ample time – nine days – between the July 29 controlled purchase and the August 7 search warrant application to write a fair and adequate portrayal of the July 29 controlled purchase.

Overby's omission concerning the informant's entry into the home during the July 29 controlled purchase undermines reliance on the Fourth Circuit's drug-trafficker-residence cases. The Government may argue that drug traffickers often keep drugs, proceeds, records, and other incriminating evidence in their homes. But any inference that Wood kept drugs inside the 141 Capitol Hill Road home depends on a factual basis for believing the home is meaningfully connected to the evidence sought. And the fact pattern here, with the omitted information included, actually points the other way: when the informant allegedly entered the home, nothing was observed there; when the purchase happened, it occurred outside, in the driveway; and when drugs were seen, they were in the Silverado's center console. Presentation of that sequence of events to the issuing judge would have weakened any basis for him to infer evidence would be found inside the home.

Overby's omission on this point was knowing and intentional, or at least reckless, because he personally participated in the July 29 controlled purchase and knew the sequence of events. He was an experienced law enforcement officer, and the

omission was significant. The fact the informant entered the interior of the home on July 29 and saw no evidence of criminal activity is not a trivial detail. It was the only fact involving the informant's entry into the home, and it affirmatively showed that the controlled purchase moved away from the home's interior and into the Silverado. A judge deciding whether to authorize a search of the home's interior would plainly want to know that the informant allegedly entered the home but did not observe any drugs there.

The omission was also material. A corrected affidavit would not establish a fair probability that evidence would be found inside the home. It would establish that the informant entered the home, met Wood, and then had to go outside to the Silverado parked in the driveway to complete the purchase. That corrected account supports probable cause, if at all, for the vehicle – not for the home's rooms, closets, drawers, containers, and safe.

### iv.  The Omissions, Considered Together, Defeat Probable Cause

Each of Overby's three omissions is independently sufficient to defeat probable cause on its own. But they must also be considered together. A corrected affidavit would have told the issuing judge that: nine days earlier, an informant with prior controlled-purchase-experience allegedly met Wood inside the home hoping to buy drugs; that the informant did not see any drugs while he was inside the home; that Wood and the informant then left the home together and walked out to the red Chevy Silverado that was parked in the driveway, where Wood allegedly sold the informant drugs; that the informant saw several ounces of methamphetamine in the center

44

console of the Silverado during that controlled purchase on July 29; that on August 6, less than twenty four hours before the warrant application, law enforcement had located and thoroughly searched the same Silverado at Wood's friend's residence, 5.3 miles away; that law enforcement seized narcotics – possibly the same narcotics – from the Silverado; and that law enforcement left the vehicle at the friend's residence after they searched it.

That corrected affidavit would not establish probable cause to search the home's interior. It would show that the only observed drug storage location was the Silverado; that the alleged transaction occurred in the Silverado; that police had already searched the Silverado and seized narcotics from it; and that the Silverado had then been left at a residence 5.3 miles away from the premises to be searched less than twenty-four hours earlier. The corrected affidavit would thus eliminate even the already-insubstantial nexus between alleged drug activity and the home.

The Fourth Circuit's materiality test requires this Court to insert the omitted facts and ask whether the revised affidavit would still support probable cause. Here, it would not. The revised affidavit would show that the warrant was issued because the state judge was not told facts that fundamentally changed the probable cause analysis. Those facts did not merely "potentially affect" probable cause; their inclusion would defeat probable cause to search the home. Colkley, 899 F.2d at 301.

### D. Suppression is Required

Because Overby intentionally, knowingly, and recklessly omitted material facts and the corrected affidavit does not establish probable cause, the warrant must be voided and the evidence seized from the home suppressed. Lull, 824 F.3d at 120.

### IV.    The Good Faith Exception in *Leon* Does Not Apply

The consequences of the affidavit's meagerness and of Overby's material omissions cannot be avoided under the good faith exception of United States v. Leon. 468 U.S. 897 (1984). The Fourth Circuit has held: "[a] warrant that violates Franks is not subject to the good-faith exception to the exclusionary rule announced in [Leon]." Colkley, 899 F.2d at 300. And Leon does not cure the warrant's myriad inadequacies because the warrant was based on an affidavit containing "knowing [and] reckless falsity," the issuing judge failed to "perform his neutral and detached function" and merely served as a "rubber stamp" for Harnett County Deputies, the affidavit is so "bare bones" that it failed to provide the judge with a "substantial basis for determining the existence of probable cause," and the warrant is so facially deficient that no reasonable officer would presume it was properly issued. Leon, 468 U.S. at 914-15, 923. Under those circumstances, reliance on the warrant was objectively unreasonable.

### V.    Request for a Hearing

In the event the Government disputes any of the facts or conclusions articulated herein, Mr. Wood respectfully requests a suppression hearing. United States v. Taylor, 13 F.3d 786, 789 (4th Cir. 1994). Further, Mr. Wood has made a

substantial preliminary showing that Deputy Overby knowingly and intentionally, or with reckless disregard for the impact their omission would have on the state judge's probable cause determination, omitted from his affidavit facts which materially undermined his showing of probable cause. Mr. Wood therefore requests a hearing on that basis as well. <u>Franks</u>, 438 U.S. 154.

<u>**CONCLUSION**</u>

Suppression of the evidence seized from the home's interior is not about nitpicking a probable cause affidavit's shortcomings. It is about an intrusion into the most sacred of Fourth Amendment spaces – a home – bolstered, only weakly, by a sophism masquerading as probable cause.

It is not about requiring an affiant to reduce every investigative fact he knows to writing. It is about an affiant who omitted the facts that mattered most: that the informant went inside the home and did not see any drugs there; that the controlled purchase moved from inside the home to the Silverado outside; that the Silverado in which the informant had seen several ounces of methamphetamine had already been searched; that the search had resulted in the seizure of several ounces methamphetamine; and that there was good reason to believe the Silverado was no longer at 141 Capitol Hill Road at the time he sought the warrant.

The issuing judge lacked a substantial basis to find probable cause within the four corners of the affidavit. Furthermore, the affidavit misled him as to the only

asserted nexus between the alleged drug activity and the home's interior. The search

of the home must therefore be suppressed.

G. ALAN DuBUOIS
Federal Public Defender

/s/ Robert J. Parrott Jr.
ROBERT J. PARROTT JR.
Assistant Federal Public Defender
Attorney for Defendant
Office of the Federal Public Defender
150 Fayetteville Street, Suite 450
Raleigh, North Carolina 27601
Telephone: 919-856-4236
Fax: 919-856-4477
E-mail: Robert_Parrott@fd.org
N.C. State Bar No. 46312
Appointed

CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the foregoing MOTION through the electronic service function of the Court's electronic filing system, as follows:

Jaren E. Kelly
United States Attorney's Office
Jaren.Kelly@usdoj.gov

This the 27th day of July, 2026.

/s/ Robert J. Parrott Jr.
ROBERT J. PARROTT JR.
Assistant Federal Public Defender
Attorney for Defendant
Office of the Federal Public Defender
150 Fayetteville Street, Suite 450
Raleigh, North Carolina 27601
Telephone: 919-856-4236
Fax: 919-856-4477
E-mail: Robert_Parrott@fd.org
N.C. State Bar No. 46312
Appointed