UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:26-CR-00078-D

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MARK ANTHONY WOOD JR. | MOTION TO SUPRRESS EVIDENCE PURSUANT TO RODRIGUEZ v. UNITED STATES AND INCORPORATED MEMORANDUM OF LAW |

The defendant, Mark Anthony Wood Jr., by and through undersigned counsel, and pursuant to the Fourth Amendment to the United States Constitution respectfully moves this Honorable Court for an order suppressing any and all evidence seized by law enforcement as a result of the search of Mr. Wood's truck on August 6, 2025. Officials with the Harnett County Sheriff's Office discovered the evidence at issue as the result of a post-traffic stop search based on their observation of a scale in Mr. Wood's truck and statements that they elicited from him in violation of his Fifth Amendment rights. Relevant to this motion, that observation, the elicited statements, and the resulting search[1] occurred after officers unlawfully prolonged the traffic stop beyond the time necessary to accomplish the traffic stop's mission.

The evidence was seized in violation of Mr. Wood's right to be free from an unreasonably prolonged seizure. Accordingly, Mr. Wood moves to suppress the

---

[1] The search, purportedly based upon a scale that officers saw in the truck and statements obtained in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966), was itself unlawful for reasons independent of those raised in the instant motion. Mr. Wood also challenges the August 6, 2025 search by separate motion, filed concurrently with the instant motion.

1

physical evidence at issue, including a black digital scale, approximately two ounces of methamphetamine, a Glock 29 10mm handgun, and ammunition.

## STATEMENT OF RELEVANT FACTS

On August 6, 2025, Sergeant Christopher Mandrick Collins of the Harnett County Sheriff's Office was parked on Old U.S. Highway 421 when he observed a red Chevrolet Silverado pulling a flatbed trailer carrying a tractor and traveling eastbound. Sergeant Collins immediately recognized the vehicle as belonging to Mr. Wood, whom he knew had an outstanding order for arrest for failure to appear for a second-degree trespassing charge. Sergeant Collins began following the truck.[2]

The red Silverado continued driving toward 380 Community Road. When it reached that address, the truck pulled into the driveway of a residence and came to a stop. Sergeant Collins activated his patrol lights and pulled in behind it.[3] Seconds later, another law enforcement vehicle with activated patrol lights pulled into the yard in front of Mr. Wood's truck, effectively boxing it in.[4] The officers claimed to have initiated a traffic stop.[5]

As Sergeant Collins exited his patrol vehicle, he observed a man outside the truck kneeling by the front tire. Sergeant Collins asked, "[h]ey, what's up man. Yo,

---

[2] Exhibit A, HCSO Incident Report dated August 6, 2025, 3.

[3] *Id.*

[4] Ex. [1], Sergeant Collins Front Camera Video, 00:20-00:35.

[5] Ex. A, 3; Ex. B, HCSO Arrest Report dated August 6, 2025, 2; Ex. C, HSCO Investigation Report dated August 7, 2025, 4. The purpose of the August 6th stop is a factual question that the Court will likely need to determine at an evidentiary hearing. That being said, it is likely immaterial whether the government claims that the stop's purpose was to investigate a traffic violation or to execute an arrest warrant. Neither purpose was diligently pursued, as will be explained further.

what are you doing?" The man stood up, walked toward Sergeant Collins, and explained that he was visiting a friend. When asked to identify himself, the man identified himself as Mark.[6]

At exactly 9:55 p.m., approximately 12 seconds into the encounter, Sergeant Collins turns Mr. Wood around and tells him to place his hands behind his back. Mr. Wood asks "What's up?" and Sergeant Collins replies "You got a warrant." Sergeant Collins puts Mr. Wood in handcuffs. Sergeant Collins then conducts a search of Mr. Wood. Throughout the encounter, Mr. Wood remained cooperative, compliant, and non-confrontational.[7]

By 9:58 p.m., three minutes later, the search of Mr. Wood's person was complete. Sergeant Collins had retrieved Mr. Wood's identification from his wallet and discussed with him the disposition of his property. However, Sergeant Collins did not put Mr. Wood into a patrol vehicle to take him to the Harnett County Jail. Instead, Sergeant Collins and other officers remained on the scene, leaving Mr. Wood handcuffed but walking around and standing near his truck, and began discussing whether and how they could justify searching Mr. Wood's truck.[8]

Body-worn camera footage captures the officers attempting to identify a legal basis for a warrantless search of the vehicle. The first officer with whom Sergeant Collins speaks tells Sergeant Collins that "you need to try get consent and run the dog" in order to search the truck. Upon being told that the truck's placement on

---

[6] Ex. [2], Sergeant Collins Body Camera Video, 00:30-00:55.
[7] *Id.*, 00:30-02:40.
[8] *Id.*, 02:40-04:26.

private property prevents them from conducting a dog sniff, that same officer says that they are going to seize the truck and apply for a search warrant. When their conversation ends, it is 10:00 p.m.[9]

Sergeant Collins then has a second conversation with another officer. Here, the second officer again suggests that Sergeant Collins initiate a dog sniff. Sergeant Collins again explains that, in his understanding, this would be unlawful as a result of the truck's placement on private property.[10]

The two then discuss the nature of the encounter and why it was initiated. The officer with whom Sergeant Collins is speaking asks whether the trailer's taillights were functioning. Sergeant Collins confirms that they were. The officer then asks whether Mr. Wood had used his turn signal. Sergeant Collins pauses. After about five seconds, he quietly responds "I don't think so." The officer then tells Sergeant Collins that Sergeant Collins stopped Mr. Wood for failure to signal, saying "Failure to signal. You got a traffic—this is a traffic stop. Failure to signal. That's the reason you stopped him." While the officer is talking, Sergeant Collins begins manipulating his body-worn camera, and the footage is then muted. The conversation continues, muted on the body-worn camera, for approximately another sixty-three seconds. Throughout this time, Mr. Wood remains handcuffed next to his truck, another officer standing next to him.[11]

---

[9] *Id.*, 04:26-05:46.
[10] *Id.*, 05:46-06:05.
[11] *Id.*, 06:05-07:56.

Sergeant Collins then returns to his patrol vehicle, reviews the dash camera footage, and confirms that Mr. Wood had used his turn signal. Another seven seconds pass while Sergeant Collins sits in silence. "Oh shit," Sergeant Collins exclaims.[12]

It is now 10:03 p.m. Even after Mr. Wood has been handcuffed, told he has an outstanding warrant, and searched, he remains standing near his truck in the driveway. It is at this point, roughly five minutes after the arrest pursuant to the outstanding warrant should have been completed, that Agent J. Peralta walks up to Sergeant Collins and tells him that he observed a scale on the center console of Mr. Wood's truck. Agent Peralta says that he questioned Mr. Wood about the scale, who told him that he has a drug habit and uses the scale to weigh his drugs.[13]

Sergeant Collins responds that he is "good with it" and stated that they had probable cause to search Mr. Wood's truck. Sergeant Collins continues "that's perfect" and reiterates that he is "good with it." At 10:06 p.m., as Mr. Wood remains standing with his hands bound behind his back, now near the trailer behind his truck, officers begin asking him if there was anything in the truck, encouraging him to "be honest." At 10:08 p.m., after they have opened the truck's driver side door, Sergeant Collins reaches in and turns the key to prevent the truck from chiming. The officers begin searching the truck.[14]

During the ensuing search, officers recovered from the center console a digital scale and methamphetamine covered by a napkin. Officers also later discovered a

---

[12] *Id.*, 07:56-08:47.
[13] *Id.*, 08:47-08:58.
[14] *Id.*, 08:58-13:45.

handgun located behind the driver's side front tire. At 10:20 p.m., Mr. Wood is still standing at the scene with his hands cuffed behind his back. By 10:25 p.m., when Sergeant Collins deactivates his body-worn camera, it appears that Mr. Wood is still standing on the scene, handcuffed and being monitored by an officer.[15]

On April 28, 2026, the grand jury returned an indictment alleging, in relevant part, that on August 6, 2025, Mr. Wood did knowingly and intentionally: (1) distribute five (5) or more grams of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1); (2) at a time separate and apart from the offense alleged above, possess with the intent to distribute fifty (50) or more grams of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1); and possess a firearm in furtherance of a drug trafficking crime for which he may be prosecuted in a court of the United States, as charged in Count Seven of this Indictment, in violation of Title 18, United States Code, Section 924(c)(1)(A). *See* Indictment, ECF-1.

## ARGUMENT

I. **Officers unreasonably prolonged the traffic stop to investigate unrelated criminal activity without independent justification.**

Agent Peralta did not notice the scale purportedly justifying the vehicle search until after officers had improperly prolonged the traffic stop to develop a rationale for searching Mr. Wood's truck. Thus, all evidence discovered as a result of the scale-based search must be suppressed.

---

[15] *Id.*, 13:45-31:13.

The Fourth Amendment guarantees to individuals the "right to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. When a seizure is effectuated through a lawful traffic stop, the Supreme Court has held that the seizure "become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission." *Rodriguez v. United States*, 575 U.S. 348, 350 (2015) (quoting *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)). Thus, if an officer's unrelated investigatory actions prolong the traffic stop beyond its purpose, those actions are unlawful. *Id.* at 354 ("Because addressing the infraction is the purpose of the stop, it may last no longer than is necessary to effectuate that purpose.") (internal quotations omitted). Of course, the Fourth Amendment does not bar police from investigating potentially illegal conduct. Additional inquiries unrelated to the purpose of the stop, however, require independent reasonable suspicion to prolong the stop. *Id.* at 355. Alternatively, a driver's consent will justify a stop's extension. *United States v. Bowman*, 884 F.3d 200, 210 (4th Cir. 2018) ("Police during the course of a traffic stop may question a vehicle's occupants on topics unrelated to the traffic infraction . . . as long as police do not extend an otherwise-completed traffic stop in order to conduct these unrelated investigations"); *United States v. Simmons*, 763 F. App'x 331, 332 (4th Cir. 2019) (finding that a traffic stop was legally prolonged because the defendant "offered his keys, volunteering that officers could search his car"). Moreover, the extension of a stop need not be extensive to trigger the Fourth Amendment. Instead, unrelated inquiries which "measurably extend the duration of the stop" are unlawful. *Id. See*

*also United States v. Williams*, 808 F.3d 238, 246–47 (4th Cir. 2015) (recognizing that the Supreme Court's decision in *Rodriguez* forecloses the argument that a *de minimis* extension of a stop is lawful due to the limited nature of the extension).

Here, Sergeant Collins, Agent Peralta, and the other officers at the scene unlawfully prolonged the stop to develop a purportedly legal rationale to search Mr. Wood's truck. They did so by (1) taking no steps after the search of Mr. Wood to effectuate his arrest pursuant to the arrest warrant referenced by Sergeant Collins at the beginning of the encounter, (2) conversing at length amongst themselves about how they could obtain authorization to search Mr. Wood's truck, (3) speculating about and investigating alternative reasons for the stop, and (4) conducting a plain view search of Mr. Wood's truck. Officers had neither Mr. Wood's consent nor independent reasonable suspicion to justify the stop's extension.

   a. **<u>The lawful extent of the stop ended at 9:58 p.m., when Sergeant Collins stopped taking steps to effectuate Mr. Wood's arrest. After that time, the stop was unlawfully extended.</u>**

The mission of the traffic stop was already completed, or at least should have been, well before Agent Peralta conducted a "plain view" search of Mr. Wood's truck and located a scale. Upon exiting his patrol vehicle, Sergeant Collins immediately confronted the man that he saw near the red Silverado, Mr. Wood's truck. He asked the man what he was doing and then asked him to identify himself. As soon as the man identified himself as "Mark," Sergeant Collins turned him around, told him to place his hands behind his back, and told him that he had a warrant for his arrest. In all, twenty seconds elapsed between the time Sergeant Collins began exiting the vehicle and the time he began putting Mr. Wood in handcuffs.

8

Sergeant Collins then performed the tasks that one might expect of a person effectuating an arrest. He asked if anyone was with Mr. Wood. He asked if Mr. Wood had any weapons on him. He frisked Mr. Wood and then conducted a more thorough search of his person. He pulled Mr. Wood's ID from his wallet, confirming his identity. He even spoke to Mr. Wood about the disposition of his property. All that was left was to put Mr. Wood into a patrol car and transport him to a booking and holding facility.

However, at 9:58 p.m., all of this arrest-related activity stops. Sergeant Collins walks away from Mr. Wood and toward other officers. And they engage in conversation, not about arresting Mr. Wood pursuant to the arrest warrant, but about searching Mr. Wood's truck. At this point, no contraband had been discovered or detected. *Cf. United States v. Palmer*, 820 F.3d 640, 650 (4th Cir. 2016) (finding that officer was entitled to extend stop with a dog sniff after he smelled marijuana while inspecting a vehicle's registration sticker). For the next twenty-six minutes documented on Sergeant Collins body-worn camera, he takes no steps to continue to effectuate Mr. Wood's arrest. This includes the five minutes between the time that Sergeant Collins's "arrest" actions stop and the time that officers develop purported probable cause to search Mr. Wood's truck. Instead Mr. Wood appears to be standing near his truck the entire time. At the point that Sergeant Collins stopped effectuating the arrest and began a hunt for probable cause to search Mr. Wood's vehicle, the stop became unreasonable. *Bowman*, 884 F.3d at 209 (stating that a reasonable stop requires that "the officer's actions during the seizure [be] reasonably related in scope to the basis for the traffic stop") (quoting *Williams*, 808 F.3d at 245).

9

## II. The actions of officers on the scene highlight the unreasonableness of the stop's extension.

The officers' failure to progress with the arrest of Mr. Wood violated the Fourth Amendment by unreasonably extending the initial seizure. Even if this were not the case, however, the stop was unconstitutionally extended for a separate reason. As discussed previously, "[a] lawful traffic stop 'can become unlawful if it is prolonged beyond the time reasonably required to complete [the] mission' . . ." *Bowman*, 884 F.3d at 209 (quoting *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)). This presupposes, of course, that a traffic stop has a mission. After all, the first step in evaluating the reasonableness of a stop is to determine whether it is "legitimate at its inception," *id.* (quoting *United States v. Hill*, 852 F.3d 377, 381 (4th Cir. 2017)), which means that an "officer must be able to point to specific and articulable facts" warranting reasonable suspicion of criminal activity, *Terry v. Ohio*, 392 U.S. 1, 21 (1968). Thus, the Fourth Amendment cannot possibly countenance a traffic stop that is prolonged so that the officer who initiated the seizure can investigate to determine *why the stop happened in the first place*. And yet, that is precisely what happened here.

Just after 10:00 p.m., about six minutes after Sergeant Collins activated his patrol lights and initiated the stop of Mr. Wood, Sergeant Collins had a conversation with another officer about the nature of the stop and why it was initiated. As related previously, that officer *told Sergeant Collins* that the reason for the stop was Mr. Wood's failure to signal. This occurred after the officer had unsuccessfully posited to Sergeant Collins a separate reason for the stop, malfunctioning taillights. Sergeant Collins then muted his body-worn camera while the two continued their discussion.

After the conversation concluded, Sergeant Collins returned to his patrol vehicle to review its dash camera footage. He confirmed that Mr. Wood had, in fact, used his turn signal and that Mr. Wood's failure to use his turn signal could not have been the reason for the stop.

For a stop to be reasonable, an officer's investigation is limited by the "scope of the initial stop" unless the officer has consent or reasonable suspicion to exceed that scope. *Palmer*, 820 F.3d at 649. Obviously, then, an officer conducting a reasonable stop must be able to define the scope of the initial stop to effectuate its purpose or mission. *See Rodriguez*, 575 U.S. at 354 ("Like a *Terry* stop, the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's mission . . . ."). Here, Sergeant Collins's apparent confusion about the purpose of his stop underscores the unreasonable nature of the stop's extension. If Sergeant Collins truly needed the conversation with the other officer and a review of his dash camera footage to determine the purpose for his stop, then it cannot be the case that his actions up to that point were in diligent pursuit of the stop's purpose. *See id.* at 357 (measuring the reasonableness of a seizure against the officer's diligent pursuit of the stop's mission). This, in itself, makes the stop's extension unlawful.

III. <u>**Evidence discovered as a result of the unlawful search should be suppressed under the exclusionary rule.**</u>

"[T]he exclusionary rule is [the court's] sole means of ensuring that police refrain from engaging in the unwarranted harassment or unlawful seizure of anyone—whether he or she is one of the most affluent or most vulnerable members of our community." *United States v. Foster*, 634 F.3d 243, 249 (4th Cir. 2011). Under

the exclusionary rule, evidence obtained in violation of the Fourth Amendment is inadmissible in a criminal trial against the victim of the illegal search and seizure. *United States v. Gaines*, 668 F.3d 170, 173 (4th Cir. 2012); see also *Weeks v. United States*, 232 U.S. 383, 391-93 (1914). Thus, the exclusionary rule reaches not only primary evidence acquired as a direct result of an illegal search or seizure, but also evidence later discovered and derived from an illegality, commonly referred to as the "fruit of the poisonous tree." *Nardone v. United States*, 308 U.S. 338, 341 (1939); *United States v. Seidman*, 156 F.3d 542, 548 (4th Cir. 1998). A court should therefore suppress evidence obtained, either directly or indirectly, as the result of "unlawful police conduct." *Nix v. Williams*, 467 U.S. 431, 441 (1984) (citing *Wong Sun v. United States*, 371 U.S. 471 (1963)).

After observing a kitchen scale inside Mr. Wood's truck, the officers entered the vehicle and searched for possible contraband. That intrusion constituted a search under the Fourth Amendment. The observation and subsequent search occurred during and because of an unlawfully extended seizure in violation of Mr. Wood's Fourth Amendment rights. But for that unlawfully extended seizure and resulting search, the scale, firearm, ammunition, and methamphetamine would not have been discovered. For that reason, all physical evidence discovered must be suppressed as the fruit of an illegally prolonged seizure and unlawful search.

## CONCLUSION

Mark Anthony Wood, Jr., respectfully requests that the Court suppress all evidence found after personnel from the Harnett County Sheriff's Office unlawfully searched Mr. Wood's truck on August 6, 2025. Alternatively, Mr. Wood requests an evidentiary hearing on this matter to resolve factual disputes and preserves the right to advance other arguments upon the discovery of subsequent information.

Respectfully requested this 27th day of July, 2026.

G. ALAN DUBOIS
Federal Public Defender


***/s/ Robert J. Parrott Jr,***
ROBERT J. PARROTT JR.
Assistant Federal Public Defender
Attorney for Defendant
Office of the Federal Public Defender
150 Fayetteville Street, Suite 450
Raleigh, North Carolina 27601
Telephone: 919-856-4236
Fax: 919-856-4477
E-mail: Robert_Parrott@fd.org
N.C. State Bar No. 46312
LR 57.1 Appointed Counsel

13

*CERTIFICATE OF SERVICE*

I HEREBY CERTIFY that a copy of the foregoing was served upon:

JAREN E. KELLY
Assistant United States Attorney
United States Attorney's Office
Eastern District of North Carolina
150 Fayetteville Street, Suite 2100
Raleigh, NC 27601

by electronically filing the foregoing with the Clerk of Court on July 27, 2026, using the CM/ECF system which will send notification of such filing to the above.

This the 27th day of July, 2026.

*__/s/ Robert J. Parrott Jr.__*
ROBERT J. PARROTT JR.
Assistant Federal Public Defender
Attorney for Defendant
Office of the Federal Public Defender
150 Fayetteville Street, Suite 450
Raleigh, North Carolina 27601
Telephone: 919-856-4236
Fax: 919-856-4477
E-mail: Robert_Parrott@fd.org
N.C. State Bar No. 46312
LR 57.1 Appointed Counsel

14