UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:26-CR-78-D-BM-1

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | GOVERNMENT'S RESPONSE IN |
| v. | ) | OPPOSITION TO DEFENDANT'S |
| | ) | MOTIONS TO SUPPRESS |
| | ) | D.E. 25 AND D.E. 30 |
| MARK ANTHONY WOOD JR. | ) | |

The United States of America, by and through the United States Attorney for the Eastern District of North Carolina, hereby responds in opposition to the Defendant's Motion to Suppress [D.E.25] and Motion to Suppress evidence pursuant to *Rodriguez v. United States,* 575 U.S. 348, (2015) [D.E. 30].[1] In his Motions, the Defendant seeks to suppress all statements made by Defendant and evidence seized from his vehicle on August 6, 2025. For the reasons that follow, the Government asks this Honorable Court to deny the Defendant's Motion and respectfully shows as follows:

**PROCEDURAL BACKGROUND**

On April 28, 2026, the Defendant was charged in a nine-count Indictment with possessing with intent to distribute five (5) or more grams of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. §§ 924(c)(1)(A), distributing a quantity of

---

[1] Defendant has filed two motions to suppress the evidence recovered from the August 6, 2025 search of Defendant's vehicle. For efficiency purposes, the government has responded to both motions in this response.

a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), distributing five (5) or more grams of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), and distributing fifty (50) or more grams of methamphetamine, in violation of 21 U.S.C. § 841(a)(1). [D.E. 1]. On July 27, 2026, Defendant filed a motion to suppress all evidence seized from Defendant's vehicle.

The Government contends that the Defendant's motion to suppress should be denied for the reasons stated below.

## BACKGROUND

The government expects its evidence will show the following relevant facts. On February 21, 2025, Harnett County Sheriff's Office (HCSO) Deputy M. Jones conducted a traffic stop of Defendant for speeding and failing to maintain lane control. Upon stopping the vehicle, Dep. Johnson identified Defendant as the driver and a female passenger. During this traffic stop, Dep. Jones discovered the license plate was fictitious. Due to the fictitious license plates, Dep. Jones asked Defendant to open his door to view the Vehicle Identification Number (VIN) to confirm the vehicle was not stolen. Defendant complied and opened the driver's side door. Upon opening the door, Dep. Johnson immediately saw a glass pipe with white residue in the driver's side door.

Dep. Johnson had Defendant step out of the vehicle and Defendant complied. Dep. Johnson asked Defendant what was in his pockets, and he removed a small pocketknife, lighter, wallet with a large amount of cash, a small plastic baggie

containing a Percocet pill, and 21 grams of methamphetamine. Dep. Johnson requested additional assistance from HCSO deputies and conducted a search of the vehicle. The deputies recovered two cell phones, drug paraphernalia, a firearm, ammunition, oxycodone pills and suboxone. Defendant was subsequently arrested.

On July 17, 2025, HCSO Detective J. Peralta conducted a controlled purchase of methamphetamine from Defendant utilizing a cooperating source ("CS"). CS met Defendant in a red Chevrolet Silverado in a parking lot of a Food Lion located at 1655 Buffalo Lake Road, Sanford, North Carolina. Defendant sold 14 grams of substance containing methamphetamine.

On July 28, 2025, Detective Peralta and North Carolina State Bureau of Investigation ("SBI") Agent T. Roberts, conducted a second control buy from Defendant utilizing a CS. CS met Defendant at the back of Smart Space Storage located at 555 Alpine Drive, Sanford, North Carolina. When CS arrived at the meeting location, Defendant was driving a tractor. CS and Defendant walked over to Defendant's red Chevrolet Silverado parked nearby. Once inside, Defendant showed CS a Glock 29 9-millimeter handgun that Defendant had previously offered to sell over the phone. CS purchased 14 grams of methamphetamine from Defendant with money.

On July 29, 2025, Detective Peralta, Agent Roberts, and Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") Special Agent A. Crumley, conducted a third control buy from Defendant utilizing a CS. CS met Defendant at Defendant's residence located at 141 Capitol Hill Road, Lillington, North Carolina. CS purchased

15 grams of methamphetamine from Defendant with money while sitting in the red Chevrolet Silverado.

On August 6, 2025, and conducted a controlled purchase of methamphetamine from Defendant utilizing a cooperating source ("CS"). CS met Defendant at a jobsite on Griffin Road near the intersection of Old U.S. 421 highway where Defendant was working. Defendant weighed out one ounce of methamphetamine in his red Chevrolet Silverado and sold approximately 28 grams of methamphetamine to the CS. After the purchase, the CS left the jobsite, and Defendant went back to working on the jobsite.

After the controlled purchase, HCSO deputies continued to watch Defendant for approximately an hour as he kept working because the deputies were aware of Defendant's active warrant for arrest. As Defendant left the jobsite, HCSO Deputy Sergeant Collins ("Sgt. Collins") was sitting stationary on Old U.S. 421 and observed Defendant's red Chevrolet Silverado pulling a flatbed trailer with a tractor eastbound. At that time, pulled out behind the truck and attempted to catch up with it. As Defendant turned into a driveway of a residence[2] on Community Road, Sgt. Collins activated his emergency lights to conduct a traffic stop and parked behind Defendant.

As Sgt. Collins approached the driver side of the door of the truck, he observed a white male crouched next to the front driver's side tire. Sgt. Collins identified Defendant as the male and informed Defendant that he has a warrant for his arrest.

[2] Defendant did not live at this residence.

Sgt. Collins placed Defendant into handcuffs and searched his person. While Sgt. Collins sat in his patrol vehicle, Detective Peralta, who was already on scene, saw a scale on Defendant's center console and asked Defendant what he used the scale for and Defendant responded that he used it for weighing his drugs because Defendant had a drug habit. Upon hearing this, Detective Peralta told Sgt. Collins about what he saw and what Defendant told him. Upon searching the truck, deputies found 54 grams of methamphetamine in the cup holder and a firearm inside a gun case.

## **ARGUMENT**

In his Motions to Suppress, the Defendant claims that all statements made by Defendant and all evidence seized from the Defendant's vehicle as a result of his arrest on August 6, 2025 should be suppressed alleging that: the warrantless search of Defendant's truck violated his Fourth Amendment rights; the officers violated Defendant's Fifth Amendment rights by subjecting him to custodial interrogation without first advising him of his *Miranda* rights; and the evidence seized from his truck violated *Rodriguez v. United States*, 575 U.S. 348, (2015) (holding that when a traffic stop is based *on a perceived traffic violation only*, the stop cannot be extended without reasonable suspicion of additional criminal activity). [D.E. 25 and 30].

The government will not seek to admit Defendant's un-Mirandized statements at trial. However, the officers had probable cause to search Defendant's vehicle from the inception of the traffic stop, before Defendant made any statement, and the fruits of the search should not be suppressed. Accordingly, they also had reasonable suspicion and probable cause to keep the vehicle detained to accomplish the search, so there was no

*Rodriguez* problem. Alternatively, even if Defendant's statement contributed to the probable cause to search the vehicle, the fruits of the search are not subject to the exclusionary rule and should not be suppressed under the Supreme Court's decision in *United States v. Patane*, 542 U.S. 630 (2004) and Fourth Circuit case law.

## I. <u>The Warrantless Search of Defendant's Truck Did Not Violate the Fourth Amendment</u>

Defendant argues that the deputies lacked probable cause to search his truck.

The Fourth Amendment to the Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. Const. amend. IV. "The touchstone of [courts'] analysis under the Fourth Amendment is always "the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security." *Pennsylvania v. Mimms*, 434 U.S. 106, 108–09 (1977) (quoting *Terry v. Ohio*, 392 U.S. 1, 19).

"The Fourth Amendment generally requires police to secure a warrant before conducting a search." *Maryland v. Dyson*, 527 U.S. 465, 466 (1999) (per curiam). However, the Supreme Court created the "automobile exception" to the warrant requirement many years ago. *Carroll v. United States*, 267 U.S. 132, 153 (1925). Under the automobile exception, police may search an automobile without a warrant if the automobile "is readily mobile and probable cause exists to believe it contains contraband." *Dyson*, 527 U.S. at 467 (quoting *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996) (per curiam)).

Once a police officer has probable cause to believe an automobile contains

evidence of a crime, he may "search every part of the vehicle and its contents that may conceal the object of the search." *United States v. Ross*, 456 U.S. 798, 825 (1982). The scope of a warrantless automobile search made pursuant to *Carroll* and its progeny is limited only to the extent that it be "as thorough as a magistrate could authorize in a warrant 'particularly describing the place to be searched.' " *Id.* at 800 (quoting U.S. Const. amend. IV).

Probable cause "exist[s] where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." *Ornelas v. United States*, 517 U.S. 690, 696 (1996). The court must examine the facts "from the standpoint of an objectively reasonable police officer," giving "due weight to inferences drawn from those facts by . . . local law enforcement officers." *Id.* at 696, 699.

Probable cause is based on the totality of the circumstances and is "a fluid concept— turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 231–32 (1983). Probable cause does not require police "to possess an airtight case" before searching, *Taylor v. Farmer*, 13 F.3d 117, 121 (4th Cir. 1993), but it does require more than mere reasonable suspicion, *see United States v. Patiutka*, 804 F.3d 684, 691 (4th Cir. 2015).

Notably, where facts "would have more than sufficed to justify the issuance of a warrant by a magistrate" to search a vehicle, "they also sufficed to justify a warrantless search" of the vehicle. *United States v. Gastiaboro*, 16 F.3d 582 (1994).

The officers had probable cause to search the truck before officers even stopped the vehicle. When the officers conducted the stop, they had just conducted a controlled purchase of narcotics from Defendant where he used this truck. There was ample reason to believe that evidence of that drug distribution—including the scale Defendant used to weight the drugs, controlled funds that the CS used to complete the deal, and additional controlled substances and trafficking paraphernalia—would be located in the truck. The officers were also aware that Defendant used this truck, at other controlled buys, for transportation and storing the methamphetamine that would be eventually sold to the CS. The officers had probable cause from the beginning of the stop. When officers viewed the digital scale through the window, that only contributed to the probable cause to search the vehicle. There was sufficient probable cause to search the vehicle for evidence of drug trafficking long before Defendant ever made a statement to police. *Carroll v. United States*, 267 U.S. 132 (1925).[3]

Here, the officers established probable cause to search Defendant's truck when Detective Peralta observed drug paraphernalia and Defendant's stated that he used the digital scale to measure his drugs. Additionally, the officers were also aware that they had just conducted a control buy from Defendant where CS saw him weigh out the methamphetamine inside of the truck. Thus, this is sufficient to establish

---

[3] The officers' subjective beliefs about whether and when they had probable cause to search the vehicle are irrelevant. The Fourth Circuit has adopted an objective standard of reasonableness. "The standard of "reasonableness" under the fourth amendment is wholly objective; the question is whether the officer's actions are "objectively reasonable" in light of the facts and circumstances confronting him, without regard to his own subjective intent or motivation." *United States v. Swann*, 149 F.3d 271, 276 (4th Cir. 1998) (quoting *Martin v. Gentile*, 849 F.2d 863 (4th Cir. 1988)).

probable cause to search the truck and the officers would be permitted to do so without a search warrant under the automobile exception.

Thus, Defendant's motion to suppress should be denied.

## II. ***Rodriguez* Does Not Apply to this Case; the Stop was Justified at its Inception and Officers Had Sufficient Reasonable Suspicion to Justify an Extension of the Traffic Stop**

Defendant next argues that the officers violated *Rodriguez* by unreasonably prolonging the traffic stop.

In *United States v. Rodriguez*, the Supreme Court held that when a traffic stop is "justified *only* by a police-observed traffic violation . . . [the traffic stop] 'become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission' of issuing a ticket for the violation." 575 S.Ct. at 350 (quoting *Illinois v. Caballes*, 543 U.S. 405 (2005)) (emphasis added). The Court reiterated that it granted the petition for certiorari in *Rodriguez* to determine a narrow question: "whether police routinely may extend an otherwise-completed traffic stop, absent reasonable suspicion, in order to conduct a dog sniff." *Id.* at 353 (emphasis added).

In *Rodriguez*, the defendant was stopped only for a perceived traffic violation; nonetheless, the officers extended the traffic stop beyond the time needed to address the traffic violation and allowed a drug canine to sniff the vehicle. *Id.* at 1616. The *Rodriguez* court concluded that the extension of the traffic stop, without reasonable suspicion that another crime was under way, violated the defendant's Fourth Amendment rights.

Here, that is not the case. Defendant was stopped based on an active warrant for his arrest. The officers also had probable cause to search the car (and thus to detain the vehicle to complete that search). The stop was not prolonged. For that reason, *Rodriguez* does not apply.

Here, it does not appear that Defendant challenges that Sgt. Collins was permitted to stop him because of the active warrant for his arrest. "[A] traffic stop constitutes a 'seizure' under the Fourth Amendment." *United States v. Ordonez-Zometa*, 141 F.4th 531, 548 (4th Cir.), *cert. denied sub nom. Hernandez-Garcia v. United States*, 146 S. Ct. 345, (2025). "[L]ike any seizure, a traffic stop 'is thus subject to the constitutional imperative that it not be 'unreasonable' under the circumstances.'" *Id.* "One such circumstance — and, indeed, a critical one here — is an officer's knowledge of an outstanding warrant for arrest. That knowledge alone can justify a traffic stop." *Id.* at 549. Sgt. Collins knew that Defendant had an active warrant and was reasonable for initiating the traffic stop. Moreover, Sgt. Collins had reasonable suspicion to stop and probable cause to arrest Defendant because the officers had just conducted a controlled buy from him. They also had probable cause to detain and search Defendant's vehicle.

Therefore, there was no *Rodriguez* violation.

## III. **Even if Defendant's statements contributed to probable cause to search the vehicle, the fruits of the search should not be suppressed because the statement was voluntary under the totality of the circumstances.**

Defendant next argues that his statements about the use of the digital scale should be suppressed because Agent Peralta violated his *Miranda* rights by asking

questions designed to elicit incriminating responses. Moreover, Defendant argues because he was not read his *Miranda* rights, those statements were involuntary and should be suppressed from being used for probable cause.

"The procedural safeguards prescribed by *Miranda* apply only where there has been such a restriction on a person's freedom as to render him 'in custody.'" *United States v. Sullivan*, 138 F.3d 126, 130 (4th Cir. 1998) (internal quotations omitted). "A person is 'in custody' for purposes of *Miranda* either if the person has been arrested or if his freedom of action has been curtailed to a degree associated with arrest." *Id*.

Here, Defendant was in custody when he was placed in handcuffs and formally arrested by Sgt. Collins. Therefore, the statements he made to police in response to questioning before he was advised of his *Miranda* rights are not admissible at trial and the government will not seek to admit them. *See United States v. Sweets*, 526 F.3d 122, 129 (4th Cir. 2007) (observing that "the right against self-incrimination is a *trial right* aimed at protecting the accused from the indignity of being compelled to give testimony against himself"). Nonetheless, even if that statement contributed to probable cause to search the vehicle (and the government maintains that probable cause existed before the statement), the evidence seized should not be suppressed. The Fourth Circuit and the Supreme Court have both held that "physical evidence" is *not* subject to suppression if "discovered as a result of statements obtained in violation of *Miranda*." *United States v. Sterling*, 283 F.3d 216, 218-19 (4th Cir. 2002); *United States v. Patane*, 542 U.S. 630, 634, 644-45 (2004); *United States v. Nichols*, 438 F.3d 437, 443 (4th Cir. 2006). "[A] failure to give a suspect *Miranda* warnings

does not require suppression of the physical fruits of the suspect's unwarned but voluntary statements." *United States v. Patane*, 542 U.S. 630 (2004). In *Patane*, a fractured majority of the Supreme Court held, consistently with this Court's precedent, "that *Miranda* does not require the exclusion of physical evidence that is discovered on the basis of a voluntary, although unwarned, statement." *United States v. Jackson*, 506 F.3d 1358, 1361 (11th Cir. 2007) (describing the holding of the fractured majority in *Patane*); *accord Nichols*, 438 F.3d at 443. "Physical evidence is trustworthy, and the value of deterrence" of a *Miranda* violation "is outweighed by 'the important probative value of reliable physical evidence.'" *Jackson*, 506 F.3d at 1361 (quoting *Patane*, 542 U.S. at 645 (Kennedy, J., concurring in the judgment)).

Defendant argues that his statements were not voluntary. Here, that is not the case. "A statement is involuntary under the Fifth Amendment *only* if it is involuntary within the meaning of the Due Process Clause." *United States v. Braxton*, 112 F3d. 777, 780 (4th Cir. 1997) (*en banc*). "A condition precedent to a finding of involuntariness is coercive conduct." *Colorado v. Connelly*, 479 U.S. 157, 165 (1986). "For a statement to be involuntary under the Due Process Clause, it must be 'extracted by . . . threats or violence'; or 'obtained by . . . direct or implied promises' or the exertion of . . . improper influence." *Id*. "In determining voluntariness of statement the court examines 'the totality of the circumstances,' including the defendant's individual characteristics and background, the setting which the statement occurred, and the details of the interrogation or interview." *United States v. Elie*, 111 F.3d 1135, 1143-44 (4th Cir. 1997).

Here Defendant's statements were voluntary. There were no threats or violence directed at Defendant, nor did the officers make any empty promises to him. Detective Peralta simply asked Defendant what he used the digital scale for and Defendant replied that he used it for measuring his drugs because he had a drug problem. Detective Peralta asked his question while he and Defendant were standing outside of Defendant's truck. Defendant did not have to answer the question and could have stayed quiet. Defendant does not allege that Detective Peralta coerced in any way nor does he allege that he felt compelled by any threats, violence, implied promises, or improper influence. He argues that because Defendant was not advised of his *Miranda* rights, the statements are involuntary. In considering the totality of the circumstances, Defendant's statements were voluntary. As mentioned in the prior section, even if these statements were not used by the officers, there was still probable to search Defendant's truck.

Because Defendants statements were made after being arrested, those statements are inadmissible at trial. However, the statements were voluntary, and the evidence obtained from the search does not require suppression.

## IV. <u>The Evidence Would Have been Inevitably Discovered</u>

If the Court determines that law enforcement's search and subsequent discovery of the firearm and drugs was unlawful for some reason, the evidence in question in this case was subject to inevitable discovery through a search of his truck pursuant to a search warrant by judge.

"Inevitable discovery demands that the prosecution prove by a preponderance of the evidence: first, that police legally could have uncovered the evidence; and second, that police would have done so." *United States v. Alston*, 941 F.3d 132, 138 (4th Cir. 2019). "To rely on the inevitable discovery doctrine, the Government first must prove that police could have used "lawful means" to discover the illegally obtained evidence." *Nix v. Williams*, 467 U.S. 431, 444 (1984). "'Lawful means include an inevitable search falling within an exception to the warrant requirement ... that would have inevitably uncovered the evidence in question." *United States v. Alston*, 941 F.3d 132, 138 (4th Cir. 2019).

The officers could have discovered the obtained evidence by conducting a search warrant for Defendant's truck. Of course, obtaining a search warrant is the preferred means for a search. As mentioned above, the officers had probable cause to search the truck based on the controlled buy from Defendant and their observations of the drug paraphernalia in plain view and his statements. More importantly, the officers conducted multiple controlled purchases from Defendant where he utilized his truck. Here, the staff would have gotten a search warrant for the Defendant's truck. Thus, Defendant's truck would have been searched, and the firearms and drugs would have been discovered.

## **CONCLUSION**

Because the search was lawful under the Fourth Amendment and Defendant's Fifth Amendment were not violated, the Court should deny the Defendant's motion.

Further, the government submits that an evidentiary hearing may be required as some of the vital facts are in dispute.

Respectfully submitted this 29th day of September 2026.

W. ELLIS BOYLE
United States Attorney

BY: /s/ Jaren E. Kelly
Jaren E. Kelly
Assistant U.S. Attorney
150 Fayetteville St., Suite 2100
Raleigh, NC 27601
Telephone: (919) 856-4121
Fax: (919) 856-4477
Email: Jaren.Kelly@usdoj.gov
NC Bar # 51627

## CERTIFICATE OF SERVICE

This is to certify that I have this 29th day of September 2026, served a copy of the foregoing response upon the defendant in this action by CM/ECF to:

Robert J. Parrott Jr.
Federal Public Defender - EDNC
150 Fayetteville Street, Suite 450
Raleigh, NC 27601
Telephone: 919-857-4479
Fax: 919-856-4477
Email: Robert_Parrott@fd.org

BY: */s/ Jaren E. Kelly*
Jaren E. Kelly
Assistant U.S. Attorney
150 Fayetteville St., Suite 2100
Raleigh, NC 27601
Telephone: (919) 856-4092
Fax: (919) 856-4477
Email: Jaren.Kelly@usdoj.gov
NC Bar # 51627