UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO.: 5:26-CR-00078-D-BM-1

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | GOVERNMENT'S RESPONSE |
| | ) | IN OPPOSITION TO DEFENDANT'S |
| | ) | MOTION TO SUPPRESS EVIDENCE |
| v. | ) | AND MOTION FOR A *FRANKS* |
| | ) | HEARING |
| | ) | |
| MARK ANTHONY WOOD, JR. | ) | |

The United States of America, by and through the United States Attorney for the Eastern District of North Carolina, hereby responds in opposition to the defendant's motion to suppress and motion for a *Franks* Hearing, and shows unto this Honorable Court as follows:

**<u>PROCEDURAL BACKGROUND</u>**

On April 28, 2026, the Defendant was charged in a nine-count Indictment with possessing with intent to distribute five (5) or more grams of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. §§ 924(c)(1)(A), distributing a quantity of a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), distributing five (5) or more grams of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), and distributing fifty (50) or more grams of methamphetamine, in violation of 21 U.S.C. § 841(a)(1). [D.E. 1]. On July 27, 2026, Defendant filed a motion to suppress all evidence seized from Defendant's vehicle.

The Government contends that the Defendant's motion to suppress and motion for *Franks* hearing should be denied for the reasons stated below.

**FACTUAL SUMMARY**

The government expects its evidence will show the following relevant facts. On February 21, 2025, Harnett County Sheriff's Office (HCSO) Deputy M. Jones conducted a traffic stop of Defendant for speeding and failing to maintain lane control. Upon stopping the vehicle, Dep. Johnson identified Defendant as the driver and a female passenger. During this traffic stop, Dep. Jones discovered the license plate was fictitious. Due to the fictitious license plates, Dep. Jones asked Defendant to open his door to view the Vehicle Identification Number (VIN) to confirm the vehicle was not stolen. Defendant complied and opened the driver's side door. Upon opening the door, Dep. Johnson immediately saw a glass pipe with white residue in the driver's side door.

Dep. Johnson instructed Defendant to step out of the vehicle and Defendant complied. Dep. Johnson asked Defendant what was in his pockets, and he removed a small pocketknife, lighter, wallet with a large amount of cash, a small plastic baggie containing a Percocet pill, and a small bag containing 21 grams of methamphetamine. Dep. Johnson requested additional assistance from HCSO deputies and conducted a search of the vehicle. The deputies recovered two cell phones, drug paraphernalia, a firearm, ammunition, oxycodone pills and suboxone. Defendant was arrested. Following his arrest, Defendant was interviewed by Bureau of Alcohol, Tobacco,

Firearms, and Explosives ("ATF") Task Force Officer (TFO) J. Overby. During this interview, Defendant told TFO Overby that he lived at 141 Capitol Hill Road.

On July 17, 2025, HCSO Detective J. Peralta conducted a controlled purchase of methamphetamine from Defendant utilizing a cooperating source ("CS"). CS met Defendant in a red Chevrolet Silverado in a parking lot of a Food Lion located at 1655 Buffalo Lake Road, Sanford, North Carolina. Defendant sold 14 grams of substance containing methamphetamine.

On July 28, 2025, Detective Peralta and North Carolina State Bureau of Investigation ("SBI") Agent T. Roberts, conducted a second control buy from Defendant utilizing a CS. CS met Defendant at the back of Smart Space Storage located at 555 Alpine Drive, Sanford, North Carolina. When CS arrived at the meeting location, Defendant was driving a tractor. CS and Defendant walked over to Defendant's red Chevrolet Silverado parked nearby. Once inside, Defendant showed CS a Glock 29 9-millimeter handgun that Defendant had previously offered to sell over the phone. CS purchased 14 grams of methamphetamine from Defendant with money.

On July 29, 2025, Detective Peralta, Agent Roberts, and ATF Special Agent A. Crumley, conducted a third control buy from Defendant utilizing a CS. CS met Defendant at Defendant's residence located at 141 Capitol Hill Road, Lillington, North Carolina. CS purchased 15 grams of methamphetamine from Defendant while sitting in Defendant's red Silverado Chevrolet.

On August 6, 2025, and conducted a controlled purchase of methamphetamine from Defendant utilizing a cooperating source ("CS"). CS met Defendant at a jobsite on Griffin Road near the intersection of Old U.S. 421 highway where Defendant was working. Defendant weighed out one ounce of methamphetamine in his red Chevrolet Silverado and sold approximately 28 grams of methamphetamine to the CS. After the purchase, the CS left the jobsite, and Defendant went back to working on the jobsite.

After the controlled purchase, HCSO deputies continued to watch Defendant for approximately an hour as he kept working because the deputies were aware of Defendant's active warrant for arrest. As Defendant left the jobsite, HCSO Deputy Sergeant Collins ("Sgt. Collins") was sitting stationary on Old U.S. 421 and observed Defendant's red Chevrolet Silverado pulling a flatbed trailer with a tractor eastbound. At that time, pulled out behind the truck and attempted to catch up with it. As Defendant turned into a driveway of a residence[1] on Community Road, Sgt. Collins activated his emergency lights to conduct a traffic stop and parked behind Defendant.

As Sgt. Collins approached the driver side of the door of the truck, he observed a white male crouched next to the front driver's side tire. Sgt. Collins identified Defendant as the male and informed Defendant that he had a warrant for his arrest. Sgt. Collins placed Defendant into handcuffs and searched his person. While Sgt. Collins sat in his patrol vehicle, Detective Peralta, who was already on scene, saw a

[1] Defendant did not live at this residence.

scale on Defendant's center console and asked Defendant what he used the scale for and Defendant responded that he used it for weighing his drugs because Defendant had a drug habit. Upon hearing this, Detective Peralta told Sgt. Collins about what he saw and what Defendant told him. Upon searching the truck, deputies found 54 grams of methamphetamine in the cup holder and a firearm inside a gun case. Following his arrest, Defendant was interviewed by TFO Overby and Special Agent Crumley. During this interview, Defendant told the agents that he lived at 141 Capitol Hill Road.

On August 7, 2026, TFO Overby applied for and obtained a search warrant from Superior Court Judge C. W. Gilchrist for 141 Capitol Hill Road. (See Exhibit A) Officers recovered evidence including 178 grams of methamphetamine, suspected marijuana, a digital scale in a safe in a bedroom closet a box of 10-millimeter ammunition in a bedroom, and boxes of various ammunition located in a barn and vehicle on the property.

## ARGUMENT

### The Court Should Deny Defendant Motion to Suppress Evidence Seized from 141 Capitol Hill Road Because the Warrant was Supported by Probable Cause and Officers Relied on the Warrant in Good Faith

In his Motion to Suppress, Defendant asks the Court to suppress the evidence seized at 141 Capitol Hill Road. He claims the search warrant affidavit lacked probable cause because there was an insufficient nexus between the house and the drug trafficking and argues it should be suppressed under *Franks*. (D.E. 22 at 5-11).

The Court should deny the Defendant's motion because he has failed to show that the warrant was invalid. He has also failed to show that the good faith exception under *United States v. Leon*, 468 U.S. 897 (1984) should not apply.

**A. <u>Sufficient Evidence Connected 141 Capitol Hill Road to Ongoing Criminal Activity</u>**

Defendant's argument that there is insufficient evidence connecting 141 Capitol Hill Road with criminal activity fails on multiple grounds. Under the Fourth Amendment, no warrant shall issue without the showing of probable cause.

> The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. "The touchstone of [courts'] analysis under the Fourth Amendment is always "the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security." *Pennsylvania v. Mimms*, 434 U.S. 106, 108–09 (1977) (quoting *Terry v.*
>
> *Ohio*, 392 U.S. 1, 19).

"The Warrant Clause of the Fourth Amendment requires that warrants (1) be issued by a neutral and detached magistrate, (2) contain a 'particular[] descri[ption of] the place to be searched, and the persons or things to be seized,' and (3) be based 'upon probably cause, supported by Oath or affirmation.'" *Id.* at 617 (quoting U.S. Const. Amend. IV) (alterations in original).

"Probable cause exists where the facts and circumstances within [officers'] knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Brinegar v. United States*, 338 U.S. 160, 175 (1949) (alterations omitted); *see also United States v. Doyle*, 650 F.3d 460, 475 (4th Cir. 2011). The magistrate's probable cause determination is a "practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *see also United States v. Grossman*, 400 F.3d 212, 217 (4th Cir.2005).

Because probable cause is evaluated through a "totality-of-the-circumstances" analysis rooted in common sense, *Gates*, courts "must accord 'great deference' to the magistrate's assessment of the facts presented to him." *United States v. Blackwood*, 913 F.2d 139, 142 (4th Cir.1990) (*quoting Spinelli v. United States*, 393 U.S. 410, 419, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969)). Courts should ask only whether there was a "substantial basis for determining the existence of probable cause." *United States v. Montieth*, 662 F.3d 660, 664 (4th Cir. 2011) (quoting *Gates*, 462 U.S. at 239, 103 S.Ct. 2317).

Further, "probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a near set of legal rules." *Id*. at 232. "The probable cause standard is not defined by

bright lines and rigid boundaries but allows a [judicial officer] to review the facts and circumstances as a whole and make a common sense determination whether there is a fair probability that evidence of a crime will be found." *United States v. Henry*, 673 F.3d 285, 290 (4th Cir. 2012) (internal quotation and citation omitted). It is well settled that law enforcement can establish probable cause from any reliable source of information. *Draper v. United States*, 358 U.S. 307, 313 (1959). The probable cause standard does not require officials to possess an airtight case before taking action. *Taylor v. Farmer*, 13 F.3d 117, 121 (4th Cir. 1993). The pieces of an investigative puzzle will often fail to neatly fit, and officers must be given leeway to draw reasonable and contradictory information . . .. *Id.*

The Fourth Circuit has long held that "the nexus between the place to be searched and the items to be seized may be established by the nature of the item and the normal inferences of where one would likely keep such evidence." *United States v. Moore*, 477 F. App'x 102, 105 (4th Cir. 2012).[2] "[A] sufficient nexus can exist between a defendant's criminal conduct and his residence even when the affidavit supporting the warrant 'contains no factual assertions directly linking the items sought to the defendant's residence.'" *United States v. Grossman*, 400 F.3d 212, 217 (4th Cir. 2005). "For example, 'the use of a gun in the commission of a crime is sufficient to establish a nexus between the suspected criminal's gun and his residence'

[2] This is an unpublished opinion.

because guns are generally kept in the home." *United States v. Wienke*, 733 F. App'x 65, 70 (4th Cir. 2018).[3]

Here, there is a sufficient nexus between Defendant's criminal activity and his residence at 141 Capitol Hill Road. The officers determined that this residence belonged to Defendant using information provided to them by a credible and reliable CS. This CS had shown that he was credible and reliable based on how we was used in the past to conduct controlled buys during other narcotics investigations that led to state and/or federal charges. It can easily be inferred from the past use of the CS that this information was credible and reliable.

Defendant argues that the information contained within the search warrant affidavit was too stale to establish probable cause. "[T]ime is a crucial element of probable cause. A valid search warrant may issue only upon allegations of facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time." *United States v. McCall*, 740 F.2d 1331, 1335-36 (4th Cir. 1984). However, "[t]he vitality of probable cause cannot be quantified by simply counting the number of days between the occurrence of the facts supplied and the issuance of the affidavit…. Rather, …. all the facts and circumstances of the case, including the nature of the unlawful activity alleged, the length of the activity and the nature of the property to be seized must be considered." *Id.*at 1336. *Accord United States v. Bosyk*, 933 F.3d 319, 330-32 (4th Cir. 2019).

[3] This is an unpublished opinion.

Here, only nine had passed from the controlled buy where CS saw several ounces of methamphetamine inside of Defendant's truck outside of his residence and when the search warrant was issued. During that period, Defendant was arrested with more than 50 grams of methamphetamine, a firearm, and admitted to keeping firearms and ammunition at his house.

Most recently, the Fourth Circuit has held that "[d]rug activity occurring at or near a residence is a relevant circumstance from which an issuing judge may infer that evidence will be found inside." *United States v. Griffin*, No. 22-4257, 2026 WL 2357208, at *5 (4th Cir. Aug. 14, 2026). "[I]t is reasonable to suspect that a drug dealer stores drugs in a home to which he owns a key." *United States v. Grossman*, 400 F.3d 212, 217–18 (4th Cir. 2005); *see also United States v. Servance*, 394 F.3d 222, 230 (4th Cir.), vacated on other grounds, 544 U.S. 1047 (2005); (recognizing "that the nexus between the place to be searched and the items to be seized may be established by the nature of the item and the normal inferences of where one would likely keep such evidence" (internal quotation marks omitted)). The Fourth Circuit has also "upheld warrants to search suspects' residences and even temporary abodes on the basis of (1) evidence of the suspects' involvement in drug trafficking combined with (2) the reasonable suspicion (whether explicitly articulated by the applying officer or implicitly arrived at by the magistrate judge) that drug traffickers store drug-related evidence in their homes." *United States v. Williams*, 548 F.3d 311, 319 (4th Cir. 2008). Based on the proximity of how close the controlled buy was to Defendant's residence,

there is a reasonably inference that Defendant would also keep methamphetamine in the residence.

Defendant is also a convicted felon for the purposes of North Carolina law.[4] North Carolina General Statute § 14-1 defines a felony as a crime which: (1) was a felony at common law; is or may be punishable by death; (3) is or may be punishable by imprisonment in the State 's prison; or (4) is denominated as a felony by statute. On March 1, 2005, Defendant was convicted of Possession with Intent to Sell or Deliver Marijuana, Possession of Cocaine, and Possession of Methamphetamine. He was sentenced to 6-8 months custody and suspended for 18 months. In Defendant's interview with TFO Overby and Special Agent Crumley, he told them that he could possess a firearm and ammunition as a felon at his residence. Specifically, he told them that there was ammunition stored in a vehicle located at his home. On April 6, 2025, HCSO deputies recovered a firearm from his truck and Defendant stated that the firearm would have his DNA on it because he handled it the day before. Defendant was also arrested in February for possessing 24 grams of methamphetamine and unlawfully possessing a firearm. Moreover, the same CS told law enforcement that he saw Defendant possessing firearms within the past month. By possessing a firearm, Defendant was in violation of North Carolina General Statute §14-415.1, which prohibits convicted felons from possessing firearms.

---

[4] Defendant's felony convictions do not subject him to the penalties of Title 18 U.S.C. §§ 922(g)(1) and 924.

When considered collectively, under a totality of the circumstances analysis, there is no question that there was probable cause to believe that evidence of a crime would be found inside the residence, specifically evidence found inside of his residence relevant to his drug trafficking and that he unlawfully possessed a firearm as a convicted felon.

### B. Defendant Conclusory Claims Fail to Make the Showing Necessary for a *Franks* Hearing

Defendant argues that TFO Overby's affidavits included intentionally or recklessly omitted material information. However, Defendant has only made conclusory claims that the affidavit contains recklessly false statements and misrepresentations and material omissions.

"[T]here is a 'presumption of validity' with respect to warrant affidavits." *Tate*, 524 F.3d 449, 454 (4th Cir. 2008) (quoting *Franks*, 438 U.S. at 171)). "In *Franks*, the Supreme Court delineated the limited circumstances in which a defendant can attack a facially sufficient warrant." *United States v. Clenney*, 631 F.3d 658, 663 (4th Cir. 2011). *Franks* requires defendants to clear two large hurdles before courts can suppress evidence: a substantial showing and a hearing.

"First, a defendant must make the rigorous showing necessary to obtain a hearing." *Id.* at 663. Defendants must show that "(1) officers knowingly or recklessly made false statements in or omitted facts from an affidavit supporting a search warrant, and (2) those false statements were material, i.e., rendered the affidavit unable to 'support a probable cause finding.'" *United States v. McKenzie-Gude*, 671

F.3d 452, 462 (4th Cir. 2011) (quoting *United States v. Allen*, 631 F.3d 164, 172 (4th Cir. 2011)).

Defendants' burden of production is high. The "showing 'must be more than conclusory' and should include affidavits or other evidence to overcome the 'presumption of [the warrant's] validity.'" *Clenney*, 631 F.3d at 663 (quoting *Franks*, 438 U.S. at 171)) (alteration in original).

Omission does not give rise to a Franks hearing unless its inclusion would have defeated probable cause for the warrant. *United States v. Colkley*, 899 F.2d 297, 301 (4th Cir. 1990) ("For an omission to serve as the basis for a hearing under *Franks,* it must be such that its inclusion in the affidavit would defeat probable cause for arrest. . . . Omitted information that is potentially relevant but not dispositive is not enough to warrant a *Franks* hearing."). "The *Franks* test also applies when affiants omit material facts with the intent to make, or in reckless disregard of whether they thereby made, the affidavit misleading." *Colkley*, 899 F.2d at 300 (internal quotation marks omitted). "When a defendant relies on an omission, [his] heavy burden is even harder to meet." *United States v. Haas*, 986 F.3d 467, 474 (4th Cir. 2021).

This is because "the affirmative inclusion of false information in an affidavit is more likely to" invalidate a warrant than an omission, as "[a]n affiant cannot be expected to include in an affidavit every piece of information gathered in the course of an investigation." *Colkley*, 899 F.2d at 300-01. In this context, "[a]n officer acts with reckless disregard when [ ]he fails to inform the magistrate of facts [ ]he subjectively

knew would negate probable cause. And the mere fact that information was omitted from an affidavit cannot alone show recklessness or intentionality." *Haas*, 986 F.3d at 475 (citation omitted). The Fourth Circuit has "considered the affiant's subjective state of mind in assessing this prong" *Id.* at 476–77; *see also Colkley*, 899 F.2d at 301 ("The most that the record here reveals about Moore's failure to include the photospread information is that he did not believe it to be relevant to the probable cause determination.").

If defendants manage to make the necessary showing, they are entitled to proceed to the second stage, the hearing. "[A] defendant faces additional burdens at the hearing stage." *Clenney*, 631 F.3d at 663. Defendants must prove perjury, reckless disregard, or intent to mislead by omission by a preponderance of the evidence. See *Id*. If they do, defendants then must show that, setting the false material aside, "the affidavit's remaining content is insufficient to establish probable cause." *Id.* (quoting *Franks*, 438 U.S. at 156). Here, Defendant has presented no evidence that the agent subjectively knew that his failure to include the omitted information would mislead the reviewing judge.

Defendant argues that the following information was purposely or recklessly omitted from the probable cause affidavit:

1. Less than 24 hours earlier, the Silverado had been thoroughly searched and the drugs inside of it had been seized;
2. After the search, the Silverado had been left at 380 Community Road; and
3. Before allegedly seeing drugs stored in the Silverado's center console during the July 29 controlled purchase, the informant had gone inside the house, where he

> allegedly met with [Defendant], but had to come back outside to complete the controlled purchase. [D.E. 23 at pg. 33].

Warrant affidavits "are normally drafted by nonlawyers in the midst and haste of a criminal investigation." *United States v. Ventresca,* 380 U.S. 102, 108 (1965). The Fourth Circuit has held that, "the process of preparing a warrant affidavit requires affiants to exercise discretion by selecting certain facts for inclusion and others for omission." *Id.* (citing *Tate*, 524 F.3d at 454–55 As stated above, "[a]n affiant cannot be expected to include in an affidavit every piece of information gathered in the course of an investigation." *Id.* (quoting *Colkley,* 899 F.2d at 300).

TFO Overby was not required to put every piece of information into his probable cause affidavit. Defendant alleges that the first statement is omitted from the affidavit, but it is easily inferred. TFO Overby stated in the affidavit that the Silverado had been searched on August 6, 2025. (Ex. A at 6; ¶3). The search warrant was applied for and obtained on August 7, 2025. It is easily inferred that the officers searched the Silverado at most 24 hours before the application for the search warrant. The search warrant also included where the CS saw the methamphetamine. The judge would have also been aware of where the controlled buy or observation of the methamphetamine took place because TFO Overby included that information as well. (Ex. A at 6; ¶5). Lastly, TFO Overby did not need to state that the Silverado was left at the 380 Community Road residence because this fact would have no bearing on establishing probable cause.

Even if this information would have been included, there is nothing reasonable to suggest that the judge still would not have found probable cause based on the information obtained by the officers' observations, the CS's observations, and Defendant's own statements. Thus, the omission of these facts would not have negated the superior court judge's finding of probable cause. Therefore, Defendant is has not met his burden and is not entitled to *Franks* motion.

**C. <u>A Good Faith Exception Applies if the Court Finds that the Search Warrants Lacked Probable Cause</u>**

Even if the Court finds that the search warrants lacked probable cause, the evidence should not be suppressed under the good faith exception to the warrant requirement. "Under the good faith exception to the warrant requirement, evidence obtained from an invalidated search warrant will be suppressed only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *United States v. Lalor,* 996 F.2d 1578, 1583 (4th Cir. 1993) (quoting *United States v. Leon,* 468 U.S. 897, 926 (1984). The good faith exception applies unless "a reasonably well-trained officer ... [should] have known that the search was illegal despite the magistrate's authorization." *Leon,* 468 U.S. at 922 n.23. The *Leon* Court outlined four situations in which an officer's reliance on a search warrant would not be reasonable:

(1) the magistrate was misled by information in an affidavit that the officer knew as false or would have known was false except for the officer's reckless disregard of the truth;

(2) the magistrate wholly abandoned his detached and neutral judicial role;

(3) the warrant was based on an affidavit that was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and

(4) the warrant was so facially deficient, by failing to particularize the place to be searched or the things to be seized, that the executing officers cannot reasonably presume it to be valid."

*United States v. Hyppolite,* 65 F.3d 1151, 1156 (4th Cir. 1995) (quoting *Leon,* 468 U.S. at 923).

Defendant cannot reasonably argue that any of these situations would apply here, as it is clear they do not. Even if this court were to find that the warrants lacked probable cause, it clearly was not "so lacking in indicia of probable cause as to render official belief in its existence *entirely unreasonable." Id.* (emphasis added).

## CONCLUSION

Based on the above, the United States respectfully submits that the defendant's Fourth Amendment rights were not violated. Accordingly, the methamphetamine recovered pursuant to the validly issued search warrant should not be suppressed.

WHEREFORE, for all the reasons set forth above, the United States requests the Court to deny the defendant's motion to suppress and motion for *Franks* hearing. The Government respectfully submits that a hearing on the motion to suppress is necessary.

Respectfully submitted, this 30th day of September 2026.

W. ELLIS BOYLE

United States Attorney

*BY: /s/ Jaren E. Kelly*
JAREN E. KELLY
Assistant United States Attorney
Criminal Division
U.S. Attorney's Office, EDNC
150 Fayetteville Street, Suite 2100
Raleigh, North Carolina 27601
Jaren.kelly@usdoj.gov
Telephone: 919-856-4092
NC Bar No. 51627

CERTIFICATE OF SERVICE

This certifies that a copy of this motion has, 30th day of September 2026, been served upon Counsel for the defendant via Electronic Mail to:

Robert J. Parrot, Jr.
Federal Public Defender
150 Fayetteville Street Mall, Suite 450
Raleigh, N.C. 27601

W. ELLIS BOYLE
United States Attorney

*BY: /s/ Jaren E. Kelly*
JAREN E. KELLY
Assistant United States Attorney
Criminal Division
U.S. Attorney's Office, EDNC
150 Fayetteville Street, Suite 2100
Raleigh, North Carolina 27601
Jaren.Kelly@usdoj.gov
Telephone: 919-856-4092
NC Bar No. 51627