UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:26-CR-78-D-BM-1

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | GOVERNMENT'S RESPONSE |
| v. | ) | TO DEFENDANT'S |
| | ) | MOTION TO SUPPRESS |
| | ) | |
| MARK ANTHONY WOOD JR. | ) | |

The United States of America, by and through the United States Attorney for the Eastern District of North Carolina, hereby responds to the Defendant's Motion to Suppress ("Motion") all evidence seized from the residence of Charlene West pursuant to the Fourth Amendment. [D.E. 29].

**PROCEDURAL BACKGROUND**

On April 28, 2026, the Defendant was charged in a nine-count Indictment with possessing with intent to distribute five (5) or more grams of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. §§ 924(c)(1)(A), distributing a quantity of a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), distributing five (5) or more grams of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), and distributing fifty (50) or more grams of methamphetamine, in violation of 21 U.S.C. § 841(a)(1). [D.E. 1]. On July 27, 2026, Defendant filed a motion to suppress all evidence seized on August 13, 2025.

## BACKGROUND

The government expects its evidence will show the following relevant facts. On August 6, 2025, and Harnett County Sheriff's Office (HCSO) Detective J. Peralta conducted a controlled purchase of methamphetamine from Defendant utilizing a cooperating source ("CS"). CS met Defendant at a jobsite on Griffin Road near the intersection of Old U.S. 421 highway where Defendant was working. Defendant weighed out one ounce of methamphetamine in his red Chevrolet Silverado and sold approximately 28 grams of methamphetamine to the CS. After the purchase, the CS left the jobsite, and Defendant went back to working on the jobsite.

After the controlled purchase, HCSO deputies continued to watch Defendant for approximately an hour as he kept working because the deputies were aware of Defendant's active warrant for arrest. As Defendant left the jobsite, HCSO Deputy Sergeant Collins ("Sgt. Collins") was sitting stationary on Old U.S. 421 and observed Defendant's red Chevrolet Silverado pulling a flatbed trailer with a tractor eastbound. At that time, pulled out behind the truck and attempted to catch up with it. As Defendant turned into a driveway of a residence[1] on Community Road, Sgt. Collins activated his emergency lights to conduct a traffic stop and parked behind Defendant.

As Sgt. Collins approached the driver side of the door of the truck, he observed a white male crouched next to the front driver's side tire. Sgt. Collins identified Defendant as the male and informed Defendant that he had a warrant for his arrest.

[1] Defendant did not live at this residence.

Sgt. Collins placed Defendant into handcuffs and searched his person. While Sgt. Collins sat in his patrol vehicle, Detective Peralta, who was already on scene, saw a scale on Defendant's center console and asked Defendant what he used the scale for and Defendant responded that he used it for weighing his drugs because Defendant had a drug habit. Upon hearing this, Detective Peralta told Sgt. Collins about what he saw and what Defendant told him. Upon searching the truck, deputies found 54 grams of methamphetamine in the cup holder and a firearm inside a gun case.

On August 7, 2026, TFO Overby applied for and obtained a search warrant for 141 Capitol Hill Road. Officers recovered evidence including 178 grams of methamphetamine, suspected marijuana, a digital scale in a safe in a bedroom closet a box of 10-millimeter ammunition in a bedroom, and boxes of various ammunition located in a barn and vehicle on the property.

On August 13, 2025, Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") Special Agent A. Crumley and TFOs J. Overby, D. Hildreth, and Moore went to the residence of Charlene West, Defendant's mother, to conduct an interview. Ms. West told the agents that she heard that Defendant had been "locked up" over drugs. Additionally, she the agents that Defendant's wife called her on August 11, 2025 and said she needed to drop some things in the spare bedroom closet, which contained a gun safe. Defendant's wife arrived approximately twenty minutes after the phone call and put something in the spare bedroom. Defendant's wife spoke briefly with Ms. West and then she left the residence.

Special Agent Crumley asked Ms. West to sign a consent form to search for pertaining to the closet and to see the closet Ms. West was talking about. Ms. West obliged and showed the agents the spare bedroom closet and signed a consent form. (See Exhibit A). Once the agents opened the closet door, they saw numerous firearms and a stand-up gun safe. When asked about the firearms outside the safe, Ms. West replied that they were Defendant's firearms that his wife brought over. Ms. West was asked for the combination to the safe and she replied that it was written on the wall in the closet. The agents opened the safe and saw more firearms. Ms. West said the firearms in the safe were hers, but then finally admitted that all of the firearms belonged to Defendant. The agents seized the firearms.

## ARGUMENT

### The Government will not use the firearms that were found inside the safe.

Defendant's argues that Ms. West did not have authority to consent to a search of the gun safe found inside of a closet in one of her spare bedrooms, thus violating Defendant's Fourth Amendment rights.

The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. "The touchstone of [courts'] analysis under the Fourth Amendment is always "the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security." *Pennsylvania v. Mimms*, 434 U.S. 106, 108–09 (1977) (quoting *Terry v.*

*Ohio*, 392 U.S. 1, 19).

"The Fourth Amendment generally requires police to secure a warrant before conducting a search." *Maryland v. Dyson*, 527 U.S. 465, 466 (1999) (per curiam). However, "the warrant requirement is subject to certain exceptions." *United States v. Perez*, 167 F.4th 709, 715 (4th Cir. 2026) "A search conducted pursuant to valid consent is a well-organized exception to the Fourth Amendment's general warrant requirement." *See Schneckloth v. Bustamonte*, 412 U.S. 218, 219; *Trulock v. Freeh*, 275 F.3d 391, 401 (4th Cir. 2001). The Fourth Amendment generally allows warrantless entry and search of a home when police obtain the voluntary consent of an occupant of the home. *Perez.* at 717.

A third party with actual or apparent authority over certain property or premises may validly consent to its search. *United States v. Matlock*, 415 U.S. 164, 170 (1974). Furthermore, even if he does not have actual authority, the search will be upheld if the officer reasonably believes the third party has authority to consent. *Illinois v. Rodriguez*, 497 U.S. 177, 186 (1990).

"To challenge a search successfully under the Fourth Amendment, a defendant must have a 'reasonable expectation of privacy' in the place that was searched." *Rakas v. Illinois*, 439 U.S. 128, 143 (1978). For an expectation of privacy to be legitimate, it must be objectively reasonable; in other words, it must be an expectation "that society is prepared to recognize as reasonable." *United States v. Bullard*, 645 F.3d 237, 242 (4th Cir. 2011). Accordingly, a defendant's Fourth Amendment rights are violated "only when the challenged conduct invaded *his*

legitimate expectation of privacy rather than that of a third party." *United States v. Payner,* 447 U.S. 727, 731 (1980).

Here, the house belonged to Ms. West, and she therefore had actual and apparent authority to permit officers to search the home, including the bedroom and closet. Although Defendant had his wife place the firearms in that closet, he did not have a reasonable expectation of privacy for that bedroom or closet because he did not live at this house nor he is an overnight guest. Consequently, the firearms that were found inside of the closet but outside of the gun safe were recovered pursuant to a lawful search and are admissible. However, Defendant did have a reasonable expectation of privacy for the gun safe because it was locked and required a combination to open it. Thus, the officers would have needed his consent or a search warrant. Therefore, the government will not seek to admit the firearms that were seized from the gun safe in the closet.

## CONCLUSION

Because the Defendant had a reasonable expectation of privacy for the gun safe, the government will not seek to admit the firearms recovered from the gun safe at trial.

Respectfully submitted this 2nd day of October 2026.

W. ELLIS BOYLE
United States Attorney

BY: */s/ Jaren E. Kelly*
Jaren E. Kelly
Assistant U.S. Attorney

150 Fayetteville St., Suite 2100
Raleigh, NC 27601
Telephone: (919) 856-4121
Fax: (919) 856-4477
Email: Jaren.Kelly@usdoj.gov
NC Bar # 51627

## CERTIFICATE OF SERVICE

This is to certify that I have this 30th day of September 2026, served a copy of the foregoing response upon the defendant in this action by CM/ECF to:

Robert J. Parrott Jr.
Federal Public Defender - EDNC
150 Fayetteville Street, Suite 450
Raleigh, NC 27601
Telephone: 919-857-4479
Fax: 919-856-4477
Email: Robert_Parrott@fd.org

BY: *<u>/s/ Jaren E. Kelly</u>*
Jaren E. Kelly
Assistant U.S. Attorney
150 Fayetteville St., Suite 2100
Raleigh, NC 27601
Telephone: (919) 856-4092
Fax: (919) 856-4477
Email: Jaren.Kelly@usdoj.gov
NC Bar # 51627